No. 13,170.

ROBERT E. RIVERS vs. OAK LAWN SUGAR COMPANY, LIMITED.

SYLLABUS.

Parol testimony is admissible for the purpose of showing whether undeclared dividends passed to the purchaser of shares of stock in a corporation; but its effect must be restricted to the parties to the transaction.

APPEAL from the Civil District Court, Parish of Orleans. Theard, J.

*S. S. Jones* and *Clegg & Quintero* for Plaintiff, Appellant.

*Saunders & Gurley* for Oak Lawn Sugar Company, Limited, Defendant, Appellee.

*Farrar, Jonas & Kruttschnitt* for M. F. Thompson, Defendant, Appellee.

The opinion of the court was delivered by

WATKINS, J.   The plaintiff claims of the defendant company, the sum of $6,006, as the amount of one-fourth of the dividends due to him on the operations of the company during the year 1897, as the owner of 280 shares of the capital stock of said company—same being engaged in the business of the cultivation of cane and the manufacture of sugar.   His averment is, that during said year, the company grew a crop of cane and manufactured sugar, with a net profit of $24,040; that said company and its directors have neglected, failed and refused to declare and pay dividends out of its profits of the year 1897.   That the dividends are due and should be declared and paid to the stockholders for that period of time.

That the profits of the year 1897 are due and ought to be apportioned and paid to the holders of the certificates of shares during the time the profit was made and earned.   That during the month of April, 1898, he sold his certificates of stock to M. Frank Thompson, who is also made a party defendant; but that he expressly reserved the ownership of the profits made and earned, and dividends declared, or to be declared for said year 1897, and the right to receive the same, and that the president of the company was informed thereof.

He avers that the operations of the company for said year had been concluded and the business and affairs of that year have closed and that a statement has been prepared and made by the officers of said company showing the net gain for the year 1897, of the sum specified, after paying all losses for the previous year.

That the company and its officers have refused, and still refuse to pay over to your petitioner his share of these profits and earnings; that the said Thompson claims the said profits, and the company threatens to make payments to him, to the loss and injury of your petitioner.

His prayer is for judgment decreeing him to be the owner of his due proportion of one-fourth of the profits and gains made and earned by the defendant company during the year 1897, and that said company be condemned and ordered to apportion and pay the profits and gains of the year 1897 to the respective shareholders, and to your petitioner the sum of $6,006.

To this petition both defendants tendered certain dilatory exceptions, which were overruled, and they, thereupon, filed separate answers.

That of the corporation is, practically, a general denial; but that of Thompson is, that he purchased the shares of stock of plaintiff under a written proposition and acceptance. That he expressly denies plaintiff's averment of the reservation of the right to receive the profits earned and dividends declared for the year 1897. He denies that any such reservation was made, and denies that any mention whatever was made respecting the profits and dividends accrued or to accrue, on said shares of stock sold to him. He avers that all the terms of said sale are shown in said written instrument which contains the sole agreement relative to said sale.

On these issues the case went to trial, and judgment was rendered in favor of the defendants, for reasons orally assigned, and plaintiff prosecutes therefrom, the present appeal.

Plaintiff offered in evidence a letter, purporting to be signed by the president of the defendant corporation, bearing date April 25th, 1898, to the introduction of which defendants' counsel urged the objection "that the contract by which plaintiff sold to Thompson his interest in the Oak Lawn plantation, is a contract in writing, and speaks for itself; and it is not competent to prove any variation of the contract which is in writing; and that the letter offered is an attempt to show that the contract by which plaintiff sold his interest in the Oak Lawn plantation, contains conditions and stipulations not contained in the writing itself."

On the other hand, counsel for the plaintiff insisted, that the letter was admissible in support of the demand for a declaration of dividends, to prove that the president was notified of the transfer; and that it is not offered to prove any contract between Rivers and Thompson.

Counsel for plaintiff, also, offered in evidence a statement of the accounts of the corporation for the year 1897, which accompanied

Rivers vs. Oak Lawn Sugar Co., Ltd.

that letter—said statement purporting to be a full account of the operations of the company for the entire season.

That statement was objected to by counsel for defendant, unless a date is given to it; to which objection counsel for plaintiff stated that, it was received from defendants about the 13th of May, 1898.

In this condition of the evidence, and without any formal ruling having been made upon the objections, the plaintiff was introduced as a witness, for the purpose of giving a history of the document offered; and, thereupon, defendants' counsel objected to the document on the ground of irrelevancy.

The decision of the court was, "I overrule the objection of irrelevancy, and the other objections I consider as going to the effect, and not to the admissibility of the evidence."

This ruling was, subsequently, modified "so as to exclude only such evidence as may tend to vary, explain or contradict any written contract of sale which may, hereafter, be introduced from Mr. Rivers to defendant, Thompson."

To this ruling, plaintiff's counsel excepted and tendered a bill of exceptions. The plaintiff introduced as his first witness the gentleman who negotiated the transaction between the plaintiff and Thompson; and he stated that Thompson engaged him to secure a written option from Mr. Rivers of his interest in the Oak Lawn Sugar Company. He says that in his interview with Thompson, "the entire matter was outlined and that he agreed to the undertaking."

That he called upon the plaintiff at the Royal Hotel and "asked him if his interest in the Oak Lawn Sugar Company was for sale in a cash transaction? He said: 'Yes'. I asked him his price. He said: 'one hundred and twenty-eight dollars per share'. · I asked him if he would give me a written option at that price. He said: 'Yes; step into my office and write out what you want me to sign'. I stepped into his office, and made a pencil transcript of the form that I desired him to copy. A few minutes after, he came in and read it to me and signed it. I asked him if the residue of the crop of the preceding year went with the option, to which he replied: 'No; there is a large amount of seconds and thirds yet to be disposed of, that will possibly represent a dividend of thousands of dollars'. After which he filled out the dates, the number of shares, signed the option and delivered same to me. This was on the morning of the 8th of February. I immediately proceeded to the Crescent Hall, telephoned

to Mr. Thompson at his stable, who agreed to meet me at the St. Charles Hotel where these statements of fact were presented to him, coupled with the presentation of the option of which he seemed to be a little skeptical on account of its being written in pencil.

\*        \*        \*        \*        · \*        \*        \*        \*

"After looking at the option again and appearing to be very nervous, we proceeded to the office of Saunders & Co., and met Mr. Saunders. Mr. Thompson handed him the option and asked him his opinion as to its binding obligations in the transaction. Mr. Saunders asked me who had formulated the option. I told him I had. He turned to Mr. Thompson and said, it is a sufficient binder. Mr. Thompson ordered him to frame a written acceptance, and requested him to accompany me to Mr. Rivers for the purpose of presenting it, which was done, Mr. Rivers reading the acceptance and expressing himself as satisfied and ready to make the delivery. Mr. Saunders requested information as to the whereabouts of the stock which he understood to have been partially hypothecated."

All of this testimony was received, subject to the foregoing objection and exception.

In the course of the further interrogation of this witness, the following occurred:

"Q. Where was it that you reported to Mr. Thompson the information in regard to the dividend—that it was to be withheld and didn't go with the option?

"A. In the St. Charles Hotel, on the morning of the 8th.

"Q. What were his instructions to you, then?

"A. Mr. Thompson's instructions to me, from the originating suggestion all the way through, was to secure the option with or without the dividend. He understood that there was a dividend accruing, but he wanted the stock with or without the dividend. That was stated to me emphatically, and repeated afterwards; stated to me emphatically on the 7th and repeated afterwards.

"Q. Was that before Mr. Saunders signed the acceptance?

"A. Yes, sir.

"Q. You mean to say that Mr. Thompson was in possession of the information—that the dividend didn't go with it—before that acceptance?

"A. Yes, sir."

Rivers vs. Oak Lawn Sugar Co., Ltd.

In the course of this witness' cross-interrogation, defendant's counsel exhibited to him a document on a letter head of the Hotel Royal, bearing date February 8th, 1898, and signed by the plaintiff; and the witness admitted that the handwriting in pencil was his own.

That document is of the following tenor:

"Hotel Royal,

"R. E. Rivers, Proprietor.

"New Orleans, February 8th, 1898.

"I hereby reserve to J. J. Fowler, bearer, my interest in the Oak "Lawn Sugar Company consisting of 270 or more shares, on a thirty-"six hour option, at the rate of $128.00 per share net cash. Said "option to expire Thursday, February 10th, 12 M.

"R. E. RIVERS."

The witness states that the date February 8, 1898, and the words 270 shares or more, are not the handwriting of the plaintiff.

"Q. Is that the option which you got for Mr. Thompson from Colonel Rivers for the sale of the Colonel's interest in the Oak Lawn Plantation?

"A. Yes, sir.

"Q. Is that your signature to the transfer of that option to Mr. Thompson?

"A. Yes, sir."

The transfer endorsed upon the letter is as follows:

"I hereby transfer and assign the above option to M. Frank Thompson for whom I, in fact, took it.

"February 10, 1898.

J. J. FOWLER."

He was subsequently asked if Thompson had not asked him why he had not spoken about the matter of dividends prior to the dates of their interview at the counsel's office, and the reply was: "No, no, Mr. Thompson could not, for he was thoroughly familiar with the fact that the dividends didn't go with the purchase.

"Q. Don't you recollect, as a matter of fact, that Thompson complained to you and found fault with you, because you had never mentioned the dividend before that occasion?

"A. No, sir; Mr. Thompson never complained to me on that ground."

The plaintiff was interrogated on this subject by his counsel, and he was asked to state the transaction between himself and Mr. Fow-

ler, acting for Thompson, in respect to the shares of stock in question; and he made a statement quite similar to that of Fowler.

A portion of it is of the following tenor:

"I think it was about the 7th of February when Mr. Fowler came in and asked me if I wanted to dispose of my interest in the Oak Lawn Plantation, and I told him I did. He said: 'Will you give me an option'? I said yes. Says he: 'What is the price'? Says I: '$128 per share'. Says he: 'Does the dividend of the present year go with it'? I emphatically told him no, for the reason that I did not know how much they were, hence I could not put a value on it because it was an undivided, unreported interest that I knew nothing of. Some years the property made fifty and sixty thousand dollars; other years made twenty-five and thirty. There was no way for me to ascertain the value of that stock. If I included the dividends to be divided with it, I couldn't put it all together.

"He says: 'Give me the option of it until to-morrow at 12 o'clock, or the next day'? Go in, I said, and write out what you please, and I will take your word for anything you want; I don't want any option. He says: 'My man does'. I said: 'I thought possibly that you would take my word for what was said'. He says: 'I will, but my man won't'. He didn't say who his man was or anything about that. Well, he went and wrote in pencil, and I signed it.

"The next day—I think it was the following day—he came with an attorney, with a check, and I gave him an order on the banks that I had the stocks hypothecated in. I had no idea that there was any technicality about signing the document, and I told him positively that the dividends of the property did not go with it."

On cross-examination the witness was shown a letter press copy of a letter addressed to him and signed J. J. Fowler, bearing date February 9, 1898, and reading as follows, to-wit:

"R. E. Rivers, Esq., Hotel Royal, New Orleans, La.

"*Dear Sir*—I hereby beg to notify you that I hereby accept your proposition made to me on February 8th, 1898, to purchase the whole of your interest in the Oak Lawn Sugar Company, represented by the share of stock in said company, and amounting to one-fourth of the total shares of stock issued by said company.

"I agree to pay, and I am ready to pay in cash $128 per share for the said shares, as soon as delivered by you to me.

"Yours very truly,                    "J. J. FOWLER."

And he admitted having received the same. That it was an acceptance of the proposition according to the agreement with Mr. Fowler.

Then follows the following interrogation:

"Q. This is the option which you gave Mr. Fowler?

"A. Upon his agreement with me to accept it without the dividend.

"Q. I am asking you for this written option?

"A. That is what I gave to him after we understood—he understood that he was buying without the dividend—I gave that to him.

"Q.—You gave that to him after the conversation which you have just stated?

"A. After he promised to take it without the dividend; because I did not know whether there was twelve thousand dollars coming to me, or whether there was only eight."

Thereupon, the defendants' counsel offered the option in evidence as a part of the witness' cross-interrogation.

The witness further stated in answer to another question, that "all this transaction (with the defendants' counsel) was after Mr. Fowler accepted my proposition, which was $128 a share without any dividend whatever."

The defendant, Thompson, was introduced as a witness for the defendants, and of his testimony, it is sufficient to say that he emphatically and circumstantially denied, all the statements that Fowler had made with regard to the plaintiff's reservation of his right to the dividends; but he admitted that Fowler was his representative in soliciting from Rivers the option, and that Fowler had delivered it to him at the time when and the place where he had stated in his examination.

We are of opinion that the parol evidence, if admissible, taken in connection with the option and acceptance, very clearly shows that it was not the intention of the plaintiff to include in his proposition the dividend which had been due him on his stock and which had been earned by the corporation at the time it was made, and that the defendant, Thompson, was so advised prior to his acceptance of the option.

This appears from the unqualified statements of Fowler, who was the agent of Thompson in soliciting an option on the stock from the plaintiff, and through whom the same was secured; and that this in-

formation was given to him at the same time and place that he delivered the option to him.

It is true that Thompson just as emphatically denies Fowler's statement; but, conceding the equal credibility of the two witnesses, we think that greater credence should be given to that of the agent, who is without interest in the transaction, than to that of the principal, who is interested therein. The testimony of the plaintiff fully corroborates the statement of Fowler, to the effect that the dividends were not included in the trade, and that he (plaintiff) so informed Fowler when the proposition was first submitted; and that is a circumstance tending to strengthen belief in Fowler's statement that he so informed Thompson at the time he delivered to him the option.

What more reasonable conclusion can there be, than that the agent made a faithful and accurate report of the transaction to his principal, as it really and actually occurred; and that it *did* occur the record furnishes the positive testimony of two witnesses.

And a circumstance confirmatory of Fowler's truthfulness is, that the record fails to disclose any motive that he could have had for concealment of the whole truth of the matter.

There is another witness—the secretary of the sugar company—whose testimony adds additional strength to that of Fowler.

We make the following extract from the record:

"Q. Do you recall Mr. Thompson and Mr. Fowler coming to you about the transfer of some stock in that company, which had previously been owned by Colonel Rivers?

"A. Yes; they came to me to get three shares—three certificates of ten shares each—which had been pledged to the company by Colonel Rivers.

"Q. Do you recollect whether anything was said on that occasion about the dividends on those three certificates of stock?

"A. I do.

"Q. What was stated?

"A. I recollect that Mr. Thompson had an order from Mr. Rivers on me for those three certificates; and I told him that those certificates had been pledged with the company—that I didn't know but what, perhaps, Colonel Rivers might be indebted some to the company; and if he would give me a paper making himself responsible to the company in place of Mr. Rivers for that stock, I would turn it over to him. He said he would, and gave it to me, and turned over

Rivers vs. Oak Lawn Sugar Co., Ltd.

the stock to him: Then I brought up the subject of dividends. I told him of course the company had no money at the time—no dividend had been declared—but that I thought there would be a dividend, and I thought it would be a good thing for them to have it understood who—I represented the company, you see, I wanted to place myself right—I told them I thought it would be advisable for them to settle that dividend, should there be any. I brought it up. Mr. Thompson said to me, 'Never mind that',—or something equivalent to that, 'we are attending to that', or something equivalent to that—I don't know what it was. I was sitting at the end of the long table—about twelve feet long. Mr. Thompson was on the side, and Mr. Fowler was right at the end of the table. And from that they went off.

"Q. How near was Mr. Fowler to Mr. Thompson, when Mr. Thompson enquired?

"A. I suppose three or four feet; something like that—within hearing distance.

"Q. You say you brought up that subject of the dividend?

"A. Yes; I brought it up; no one said anything about it. I brought it up. I thought I ought to know as an officer of the company, what was their understanding.

"Q. And when you asked whose the dividend would be, what did Mr. Thompson say?

"A. He said 'never mind about that', or something equivalent to that."

. Both Fowler and Thompson were present at the office of the company when the foregoing conversation occurred; and if, at the time, there had been any doubt about the ownership of the dividends, it was a manifest duty of the purchaser of the shares to have made the matter clear to the secretary of the company who was called upon by Thompson to transfer the shares to him; because he had a right to be advised as the company had an interest in being informed.

We will next consider the question of the admissibility of the parol evidence which was not considered by the district judge, on the ground that its tendency was to contradict or go beyond what is contained in the written acts, or to show what has been said before, or at the time of making them or since. R. C. C., 2776. The contention of counsel for the plaintiff is, that while the rule announced by the court below is not strictly applicable to agreements relative to

movable property and the payment of money (R. C. C., 2779), same can not be applied in the instant case; that "it does not apply, as the testimony was not offered to alter or vary, or add to, or change the contract of sale between Rivers and Thompson. That it was offered for the purpose of showing what was sold. * * *

"That it was offered to prove what was done pursuant to the binding agreement. That Thompson through Fowler asked of Rivers a written promise to sell to him (Thompson) the shares of stock owned by Rivers. That Rivers signed this promise or reservation to Thompson, of the right to buy, and when he (Fowler) delivered to Thompson this reservation he told Thompson exactly and emphatically what he purposed to sell him. That while Rivers promised in writing that for forty-eight hours he would not sell his shares to another, he told Thompson at the same moment, and before Thompson acted or accepted, that he would not sell him the right to the profits."

His contention is, that this testimony is admissible, and should be considered by this court under the general rule of evidence, that "parol testimony must be resorted to in order to ascertain the nature and qualities of the subject to which the instrument refers.

* * * * * * * *

"That whatever, therefore, indicates the nature of a subject is a just medium of interpretation of the language and meaning of the parties in relation to it," etc.

1st Greenleaf on Evidence, Sec. 286.

The parol testimony which we have under consideration, relates to the *option* that Fowler procured from Rivers; and it consists of a statement that Rivers made to Fowler, at the moment of time when the matter of the assignment of the shares was first opened, and which was communicated by Fowler to Thompson at the time when and the place where the option was by the former delivered to the latter.

An option is not a completed sale, but only an open proposition until it has been accepted.

In Schleider vs. Dielman, 44th Ann., 462, this court had occasion to say on this subject, that "an option is not an *actual* or existing contract, but merely a right reserved in a subsisting agreement.

* * * * * * * *

"In a certain sense an option is a mere pollicitation, a promise without mutuality, not yet ripened into a perfect agreement containing

mutual stipulations which either may enforce, and from which neither
is at liberty to recede.

"It is an open proposition by one party to a contract, which must be
accepted in precise terms by the other, in order that it may be binding
upon both parties."

As the contract in such cases necessarily consists of a proposition
and an acceptance—and as in this instance they were represented by
two writings that were submitted and signed at different dates—there
would appear to be good reason for admitting parol testimony in order
to clearly ascertain the nature and qualities of the subject matter to
which they refer; and, in our opinion, such evidence is, in the lan-
guage of Greenleaf, "a just medium of interpretation of the language
and meaning of the parties in relation to it."

Many decisions of this court might appropriately be cited in which
that principle is announced, but we consider it necessary only to refer
to a few of them.

In Bayley vs. Denny, 26th Ann., 255, the court had under consider-
ation the sale of a sugar plantation and the question of difficulty was
as to what improvements had been sold therewith, and in the course
of their opinion they said:

"The plaintiff, however, denies that his testator sold to the defend-
ant the improvements erected by Pugh; that it was only the share or
interest of Bayley in the land and improvements that was intended to
be conveyed.

"This is supported by the evidence in the record. The defendants
excepted to the introduction of parol evidence, * * * on the
ground that it was attempting to explain, add to, contradict and vary
the deed and mortgage upon which the suit is based."

And when considering, the court said:

"We think the court did not err in receiving the evidence to explain
what improvements were intended by the parties to be sold. The ob-
ject of this proof was to ascertain the nature of the subject to which
the instrument refers. 1st Greenleaf, Sec. 286."

In Campbell vs. Short, 35th Ann., 447, the plaintiff sought to re-
cover on a written contract for the delivery of coal, and the crucial
question was, "whether parol evidence was properly admitted to show
its meaning and intent—the contract being silent as to the precise
quantity of coal that the defendant had or could order within the
terms prescribed."

The court held that such evidence could be introduced and considered as *"explaining* the contract in this particular, not adding to it nor altering it; that such evidence must be introduced to prove these conditions".—citing 1st Greenleaf, 286.

In Janny vs. Brown, 36th Ann., 118, it was held that in a litigation growing out of a written contract between common carriers, parol testimony is admissible to prove a subsequent verbal agreement in relation to the carrying of certain merchandise.

Under the foregoing authorities as well as the general rule of evidence as it is announced by Greenleaf, we regard the parol testimony in the record as competent, and the proper subject matter for our consideration; and giving effect to said testimony, we are of opinion that the clear preponderance and weight of same is in favor of the plaintiff.

Entertaining this view, we must reverse the judgment appealed from, and render one in favor of the plaintiff and against the sugar company, for the amount claimed by him, and denying the claim of M. Frank Thompson. This case is *sui generis,* and this opinion is restricted to the parties.

It is, therefore, ordered and decreed that the judgment of the lower court be annulled, avoided and reversed; and it is now ordered and decreed that the plaintiff, R. E. Rivers do have and recover of the Oak Lawn Sugar Company, Limited, the sum of one-fourth of the declared profits earned, amounting to the sum of six thousand and six dollars ($6,006), with five *per cent.* interest from judicial demand; and that the demands of the defendant, M. Frank Thompson, be rejected.

It is further ordered that all costs be taxed against the defendants, *in solido.*

Mr. JUSTICE MONROE dissents.

## ON APPLICATION FOR REHEARING.

We have examined the very earnest and forcible presentation of the case of the defendants on their application for rehearing, but find no occasion to change the conclusions we reached on the law as announced in our opinion.

But counsel for the sugar company have attracted our attention to the fact, that an examination of its books since our opinion was handed down, has disclosed a manifest error in the statement of its treas-

urer as to the *actual* interest of the plaintiff in the company, which is represented by his shares of stock therein; and affidavits have been filed in this court in support of that contention.

For the purpose of having that question of fact properly determined, we think the proper course to pursue, is to remand the case, with instructions to the district court to examine and determine that question without, however, disturbing our judgment and decree in any other respect.

It is, therefore, ordered and decreed that in so far as the application for rehearing relates to the merits of the case, same is hereby refused. And it is further ordered and decreed that in so far as the question of fact with regard to the interest of the plaintiff in the sugar company is concerned, our decree be vacated, and the cause remanded in that respect to the district court, with instructions to examine and determine that question—without however interfering with the judgment and decree of this court in any other respect.