Grai-iam, Judge,
delivered the opinion of the court:
This case has been reheard on a motion for a new trial and amendment of findings. The motion for a new trial has been granted, and certain amendments have been made to the findings.
Nothing was presented on the reargument of the case, and there is" nothing in the amended findings of fact to alter the previous conclusions of the court in this case.
This is a suit to recover under a provision of the act of July 9, 1918, 40 Stat. 845, 850. The particular portion of this act relied upon is as follows:
“ Sale of war supplies. — That the President be, and he hereby is, authorized, through the head of any executive department, to sell, upon such terms as the head of such department shall deem expedient, to any person, partnership, association, corporation, or any other department of the Government, or to any foreign State or Government, engaged in war against any government with which the United States is at war, any war supplies, material, and equipment, and any by-products thereof, and any building, plant, or factory, acquired since April sixth, nineteen hundred and seventeen, including the lands upon which the plant or factory may be situated, for the production of such war supplies, materials, and equipment which, during the present emergency, may have or may hereafter be purchased, acquired, or manufactured by the United States; ” etc.
*9 The plaintiff bases his right to recovery upon a portion of section IT of Schedule A attached to the contract and made part of the findings, which is as follows:
“ Should there be additional 80 # A. IT. A. type ‘ B ’ rail and accessories declared surplus within five months other than that mentioned in sections 2 and 3, the purchaser shall have the right to accept the same under the general conditions, qualifications, and prices as stated in this contract.
“ The contracting officer agrees to give a ten-day notice to the purchaser of such material as is available, and the purchaser agrees to give a certified check of ten (10%) per cent of the value of this material, said check to be held as a guarantee as indicated in section 13 (b). Payment for the delivery of this material' to be made as called for in section 13 (c) ”
This is nothing more than an option of purchase for future delivery. The act conferring, as it does, special power upon the President only authorized the sale of material and gave no. authority to give an option of purchase. An option is not a sale. It is a mere right in a possible purchaser where consideration has been paid by him for the option to announce his decision to accept and demand delivery according to the terms of the option.
“An option is not an actual or existing contract, but merely a right reserved in a subsisting agreement. In a certain sense an option is a mere pollicitation, a promise without mutuality, not yet ripened into a perfect agreement. It is a proposition by one party to a contract, which must be accepted in precise terms by the other in order that it may be binding upon both parties.” Rivers v. Oak Lawn Sugar Co., 52 La. Ann. 762.
“An option is nothing more than a continuing offer to sell but until it is accepted it does not become a contract of sale. * * *. It is only when there has been an acceptance of a proposal to sell that the vendee becomes in any sense the equitable, owner of the subject matter of the option.” Milwaukee Mechanics’ Ins. Co. v. Rhea & Son, 123 Fed. 9, 11.
It seems desirable in that connection to discuss another phase of the matter, namely, whether, assuming that pafa-graph 17 of the contract did not constitute an option, it was binding on the Government as a valid contract of sale. It is to be borne in mind that the officers of the Government, including those who made this contract at the time of its *10 execution, knew only that there was a declared surplus of 28,500 tons, named in sections 2 and 3 of the contract, for sale, and were in entire ignorance not only of how much more would be declared a surplus in the future but of what total amount of rails was actually owned and possessed by the Government at the time, ns the inventory then being taken had not been completed and was not completed until more than a month thereafter.
The question is presented as to what authority the contracting officers had to. sell for delivery at some future time an unknown, undetermined amount of material which the Government might- or might not possess, its possible existence being dependent upon facts which were not known to exist at the time of the sale — upon events which might never happen. It is plain that the statute under which this sale was made conferred no such authority, and it is equally plain that these officers had no. such general authority. They had no authority, to use the vernacular, to sell “ a pig in a poke”; to enter into a purely speculative contract; to create an obligation on the part of the Government without knowing the facts which would determine that obligation; to sell what is was not known at the time the Government possessed and to tie the Government’s hands in dealing with its property in the future. The statute authorized them to sell what it Avas known the Government had for sale, at the time of sale and not what it did not have or was not then known to have.
At the time this contract was entered into it was not definitely known what quantity of rails, how many tons of rails, the Government had on hand. An inventory was being taken at the time and it was thought that it would be completed within five months, and so this period for declaring a surplus was fixed in the contract; that is, the plaintiff had the option of accepting at the price fixed in the contract such surplus as was declared within a period of five months. The inventory taken was completed about the 28th of October, 1919, the contract having been entered into on September 22, 1919. It was a carefully taken inventory by an officer who had purchased a large part of the rails and accessories used by the Government during the war. There *11 was an actual physical count of the rails. This inventory showed that the Government had on hand at the time the contract was entered into and at the time the inventory was taken approximately 119,483 tons of rails and approximately 3,300 tons were found located at Philadelphia, making a total of approximately 122,869 tons of rails. Of this amount 62,855 tons had been set aside and reserved for contemplated military operations, about 3,000 tons were reserved and after-wards used in certain War Department projects, and 55,137 tons, of which 54,893 tons were stored at Kearney, N. J., 37 tons at Port Newark, N. J., and 207 tons at Old Hickory Plant, Tennessee, and some at other x>Hces. Of said tonnage of 55,137 tons, 28,500 tons represented the. 12,500 tons and 16,000 tons mentioned in plaintiffs contract.
It seems very clear from the facts that the plaintiff under his contract received' all the material that was declared surplus or that was actually held as surplus by the War Department for sale within the five months named in his contract. It is true that the 62,855 tons reserved for contemplated military operations was sold in April. 1920, as surplus, but this was several months after the expiration of the five months within which the plaintiff was given an option to purchase. There can be no question of the department's right to reserve this latter tonnage and of its right later when it was found that it was not needed to sell it. The plaintiff never at any time under this contract had any rights in connection with this 62,855 tons.
The plaintiff in his petition in this case sued for the recovery of the difference between the contract price of $40 per ton and the alleged market price of $55 on 62,490 tons, being the alleged tonnage reserved by the Government for military operations and sold as surplus, as above stated. -All that the plaintiff can in any event claim of the steel mentioned or referred to in the. contract is that which would have been “ declared surplus within five months.” He recognizes this when he avers that rail, other than that delivered to him, was in fact declared surplus within the stated period. The petition states, and the facts show, that deliveries were made of the 12,500 tons mentioned in section 2 and the 16,000 tons mentioned in section 3 of- the schedule, as well as of' *12 28,600 additional tons, making an aggregate of 57,100 tons delivered. It is to- be observed that the 16,000 tons mentioned in section 3 as being “ rail now used as ballast in ships ” was admittedly a part of the rail that was delivered after the contract was made. The findings show that, excepting the 57,100 tons delivered, no other rail was declared surplus within the contract period. The plaintiff does not allege, as above stated, that other rail aggregating 62,490 tons became and was declared surplus within the five months. He not only fails to establish the essential allegation, but the findings negative the existence of the essential facts.
The plaintiff is not entitled to recover and his petition should be dismissed, and it is so ordered.
Hay, Judge; Booth, Judge; and Campbell, Glvief Justice, concur.