Henry, Appellant, *v.* Black.

*Equity—Specific performance—Purchase of equitable title—Countervailing equities.*

The purchaser of an equitable title takes it subject to all the countervailing equities to which it was subject in the hands of the person from whom he purchased it.

*Real estate—Option—Contract—Variance from option.*

An acceptance of an option to be good must be such as to conclude an agreement or contract between the parties. To do this it must in every respect meet and correspond with the offer, neither falling within nor going

beyond the terms proposed but exactly meeting them at all points and closing them just as they stand.

An offer to sell imposes no obligation until it is accepted according to its terms. So long as the offer has been neither accepted nor rejected, the negotiation remains open, and imposes no obligation upon either party; the one may decline to accept, or the other may withdraw his offer and either rejection or withdrawal leaves the matter as if no offer had ever been made. A proposal to accept or an acceptance of an option, upon terms varying from those offered, is a rejection of the offer and puts an end to the negotiation, unless the party who made the original offer renews it or assents to the modification suggested. The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance.

Where a person makes an offer to purchase on terms different from those set forth in an option, but according to an agreement to be subsequently made, which is not made, a decree of specific performance will not be made, although the intended buyer paid the required hand money and subsequently agreed to purchase under the terms of the option.

*Equity—Specific performance—Vendor and vendee—Principal and agent—Fraud—Option—Effect of failure to accept option in its entirety.*

On a bill in equity for specific performance it appeared that M employed C to endeavor to get an option from B for property owned by her. C obtained an option in writing for himself, his nominee or assigns, for thirty days, with the distinct oral understanding that the option was procured for M. M was informed that the option had been procured, said he believed the price was too high but would consider it. C was treasurer of a corporation engaged in the business of buying and selling real estate, and employed by the corporation to transact business exclusively for it. Subsequently C agreed to sell the property to H giving a receipt in the name of the corporation for cash paid for hand money for the property sold "as per agreement made this day." An agreement between B and H, different in terms from the option, was prepared and signed by H, but B refused to sign it. Three days before the expiration of the option H offered to accept the option in its entirety and tendered the purchase money. On the same day M, with full knowledge of the dealings with H, gave notice of his acceptance of the option and later the property was conveyed to him. H then filed a bill for specific preformance. *Held,* (1) that C was the agent of M in procuring the option; (2) that M's equities were countervailing and superior to any that could be asserted by H; (3) that the failure of H to accept the option in the first instance in its entirety was a rejection of it and that B was not bound by the subsequent offer to accept it; (4) that a decree dismissing the bill should be affirmed.

Argued Nov. 3, 1905. Appeal, No. 198, Oct. T., 1905, by plaintiffs, from decree of C. P. No. 2, Allegheny Co., July T., 1903, No. 585, dismissing bill in equity in case of D. F. Henry and Annie E. Henry, his wife, in right of Annie E. Henry, v. Sarah Black, The Union Realty Company, Robert J. Coylé, Jr., Andrew W. Mellon and William Witherow. Before

MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ.  Affirmed.

Bill in equity for specific performance.   Before SHAFER, J. Hearing on bill, answer and proofs.

In addition to the fact as stated in the opinion of the Supreme Court the court below found that on June 5, 1903, two days before the expiration of the option, the appellant offered to take the property upon the terms set forth in the option, and tendered the purchase money and a bond and mortgage as provided in the option.

*Error assigned* was decree dismissing the bill.

*William A. Stone*, with him *Stephen Stone*, for appellants.

*James H. Beal*, of *Reed, Smith, Shaw & Beal*, with him *S. S. Mehard, John C. Slack, Henry A. Davis, Ralph Longenecker* and *Scandrett & Barnett*, for appellees.

OPINION BY MR. JUSTICE BROWN, January 2, 1906 :

When this case was before us a year ago it was on appeal from the decree of the court below sustaining the demurrer of the defendants.  In reversing that decree our late Brother DEAN set forth the material averments of the bill, admitted by the demurrer to be true.   They were, in his words (210 Pa. 245) : " That Sarah L. Black, one of the defendants, on January 7 and for years prior thereto was the owner in fee simple of a lot of ground on the corner of Smithfield street and Virgin alley in the city of Pittsburg, known as the Hotel Duquesne property ; that plaintiffs owned the Hotel Henry property adjoining the Hotel Duquesne ; the Union Realty Company is engaged in the business of buying and selling on commission the property of owners ; on May 7, 1903, Sarah L. Black gave to R. J. Coyle, stockholder and treasurer of the Union Realty Company, and to his nominee and assigns an option for thirty days on the Hotel Duquesne property at the price of $800,000 payable $25,000 cash, the balance, $775,000, to be secured by bond and mortgage for ten years bearing interest at four per cent payable semiannually ; Sarah L. Black agreed to pay the

Union Realty Company $10,000 if sale was made. Coyle and one John K. Ewing, a director of the company, then sold to Annie E. Henry the Hotel Duquesne property on June 1, following, within thirty days, at the exact price specified in the option of Mrs. Black to Coyle, but substituting as the vendor the Union Realty Company. This is a copy of the writing delivered to Mrs. Henry:

" ' June 1st. 1903. Received from Mrs. Annie E. Henry five thousand dollars ($5,000) hand money on account of sale of Hotel Duquesne property as per agreement made this day.

(Signed) ' UNION REALTY COMPANY,
' $5,000                                     per J. K. EWING.'

" The negotiations for the sale were made and carried on by and through Ewing and Coyle; the $5,000 named in the receipt or contract was paid them; the plaintiffs, on June 5, 1903, within five days, tendered to Sarah L. Black $25,000 in cash and a purchase money mortgage payable with interest as stipulated in her option, and demanded a deed; she refused to accept the money or deliver a deed; in five days before filing this bill and ten days after plaintiffs tendered to her the cash, mortgage and bonds, Mrs. Black executed and delivered to Coyle a deed for the property, received from him the $25,000 cash with the mortgage and bond in the sum of $775,000; the same day Coyle executed to A. W. Mellon his deed for the property for the consideration agreed to be paid by Mrs. Henry to the Union Realty Company. Mellon took the deed with the full knowledge of the previous negotiations and transactions between Coyle and Mrs. Black, and between Coyle, Ewing, the Union Realty Company and Mrs. Henry. The Union Realty Company received from Sarah L. Black $10,000 commissions on the first sale of the property to Mrs. Henry; either the company or Coyle for the company received an additional commission from Mellon for the sale of the property to him."

Having assumed, as we were bound to assume by the demurrer, that the foregoing averments were true, we held the designation of the property in the receipt as the Hotel Duquesne to be a sufficient identification of it to make it the subject of a decree for specific performance; that Coyle was a trustee of the equitable title to the property in favor of the realty company,

and that its rights had passed to Mrs. Henry by the receipt of June 1, 1903: that the conveyance had been made to Mellon with full notice of all the transactions and all the conduct of the parties up to and including the sale to the plaintiff; and that, if he took his deed from Coyle with notice of Coyle's mala. fides, he was but a trustee of the title for the first purchaser, Mrs. Henry. The demurrer was overruled, the bill reinstated and the defendants were directed to answer over.

On the hearing before the court below a very different situation was presented from that appearing on the face of the bill, and, in view of findings that could not have been avoided, no chancellor would now take the property from Mellon and decree it to the appellant. The bad faith and misconduct of Coyle are most reprehensible and cannot be too strongly condemned; but the one who can most justly complain of them is A. W. Mellon. More than six months prior to May 29, 1903, when D. F. Henry, the husband of the appellant, was first approached about the purchase of the Hotel Duquesne, A. W. Mellon had employed Coyle to find out for him whether Mrs. Black would sell the property, and, if so, to endeavor to get an option upon it. At that time Coyle did not even know Mrs. Black, but, having ascertained her residence, went to see her and endeavored to persuade her to sell the property, not, however, mentioning the Mellons at first. He made repeated visits at various times, and she declined to sell or to give an option. Finally he told her he was acting for the Mellons, who were more or less known to her, she having been a depositor in their bank. Having many times refused to sell the property or to give an option on it to Coyle, alleging as a reason that she would not know what to do with the money if she had it, she finally, as she says, in order to get rid of his importunities, said she would give him an option for $800,000. Coyle thereupon said he would take it, and she executed the following, which is printed as exhibit "A" of the plaintiff's amended bill:

"Pittsburg, May 7th, 1903.

"I, Sarah L. Black, of the Borough of Swissvale, County of Allegheny and State of Pennsylvania, in consideration of one ($1) dollar, the receipt of which is hereby acknowledged, do

give to Robert J. Coyle, Jr., his nominee or assigns, the option for thirty (30) days from this date to purchase in fee simple those certain lots or pieces of land in the Third ward of the City of Pittsburg, known as Nos. 520 and 522 Smithfield street, having a frontage of 44 feet on Smithfield street by 60 feet in depth and lot contiguous to and adjoining on rear fronting 60 feet on Virgin Alley and extending back 84 feet to line of property of A. W. Mellon; said property being known as 'Hotel Duquesne,' for the sum of eight hundred thousand ($800,000) dollars, payable as follows : twenty-five thousand ($25,000) dollars cash and the balance of seven hundred and seventy-five thousand ($775,000) dollars to be secured by bond and mortgage for ten (10) years, bearing interest at four (4%) per cent payable semiannually.

" Witness my hand and seal this seventh day of May, A. D. 1903.

" SARAH L. BLACK.     (Seal)
" Attest :
" E. M. BLATT."

At the time Mrs. Black gave the option she had no knowledge of the Union Realty Company and was dealing entirely with Mr. Coyle, so far as she knew.   He told her that his purpose in getting it was to make a sale to the Mellons, which she believed, and the distinct finding of the court is that Coyle was, in fact, the agent of the Mellons to procure it.   Mrs. Black testified; " He promised me faithfully that nobody else would get it but the Mellons, if that's plain.   He promised me faithfully a dozen of times that nobody would get it but the Mellons, for I wouldn't sell it to anybody else.   I thought the Mellons ought to have it because they had the most of the square and the old gentleman used to come and see that building going up and he stood there watching it, seeing that they are doing it right, and he would say ' They are making a good job for you,' and I would have been afraid to build almost if it hadn't been for him. . . . This here, Mr. Coyle, he was determined he would have it and he said it was for the Mellons, and I thought I might as well give it to the Mellons, as I had no child to leave it to, and no person to leave it to, and I just thought Mellons had the most right to it."   In this she is confirmed by her nephew, R. G. Jackson, who was present at the

interview between her and Coyle. The latter himself testified: "Mrs. Black asked me·if the option was being taken for the Mellons and I told her again that it was, and she executed the option at that time." When Coyle notified A. W. Mellon that the option had been procured the latter said, according to his testimony: "I said to him that the price was too high but that, perhaps, we would have to pay that price for it, but just to keep it and we would make up our minds about it. The option had thirty days to run and my idea was that there was no urgency about it and that I could close it out toward the end of the option term." This Mellon did on June 5, 1903—three days before the option had expired—by giving notice to Coyle and Mrs. Black that the option was accepted. Mellon further testified that when he learned that Coyle had, in bad faith, offered the property to Henry, he said to Coyle that he and Ewing "hadn't any right to do anything of the kind, that the option had been taken for us and belonged to us and it was in bad faith to us to offer the property for negotiation with others." To this Coyle made reply that he did not think there was anything in it, or something to that effect. From the foregoing undisputed facts it is manifest, as found by the court below, that Coyle was the agent of the Mellons in procuring the option, and A. W. Mellon is involved in none of the mala fides of the case. On the contrary, the equities of it are all with him.

What Mrs. Henry purchased from the realty company was an imperfect title upon its face—a mere equity at the best in the property, for the legal title still remained in Mrs. Black. This being the case, she is bound by the rule announced in Chew v. Barnet, 11 S. & R. 389, that the purchaser of an equitable title takes it subject to all the countervailing equities to which it was subject in the hands of the person from whom he purchased it. Of this rule it is said by GIBSON, J., in that case: "Now, every equitable title is incomplete on its face; it is, in truth, nothing more than a title to go into chancery, to have the legal estate conveyed; and, therefore, every purchaser of a mere equity takes it subject to every clog that may lie on it, whether he has had notice of it or not. But the purchaser of a legal title takes it discharged of every trust or equity which does not appear on the face of the conveyance, and of which he has not had notice, either actual or constructive."

The equities of Mellon were countervailing and superior to any that can be asserted by the appellants, in view of the facts just referrred to.

But, eliminating Mellon from the case, and with nothing before us but the option given by Mrs. Black on May 9, and the receipt of the realty company of June 1, is there a contract that can be specifically enforced? The option was not unconditionally accepted, but, as appears from the receipt, the appellant paid $5,000 hand money on account of the sale of the property, not according to the option, but as "per agreement this day made." An acceptance of an option, to be good, must be such as amounts to an agreement or contract between the parties. Such an acceptance can be only an unconditional one. The rule upon this subject is thus stated in Potts v. Whitehead, 23 N. J. Eq. 512 : "An acceptance, to be good, must, of course, be such as to conclude an agreement or contract between the parties. And to do this, it must in every respect meet and correspond with the offer, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand: Huddleston v. Briscoe, 11 Ves. 583; Carr v. Duval, 14 Pet. 77; McKibbin v. Brown, 1 McCarter, 13 ; s. c. Court of Appeals, 2 McCarter, 498; Honeyman v. Marryatt, 6 H. L. C. 112; Routledge v. Grant, 4 Bing. 653; Kennedy v. Lee, 3 Meriv. 441; Hutchinson v. Bowker, 5 M. & W. 535; Eliason v. Henshaw, 4 Wheat. 225 ; 1 Parsons on Cont. 476, 477; Story on Sales, sec. 136, and cases cited n. 1." In Minneapolis & St. Louis Railway Company v. Columbus Rolling-Mill Company, 119 U. S. 149, the same doctrine is announced : "As no contract is complete without the mutual assent of the parties, an offer to sell imposes no obligation until it is accepted according to its terms. So long as the offer has been neither accepted nor rejected, the negotiation remains open, and imposes no obligation upon either party; the one may decline to accept, or the other may withdraw his offer ; and either rejection or withdrawal leaves the matter as if no offer had ever been made. A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested,

The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance."

The agreement of Mrs. Henry was not, then, to purchase on the terms set forth in the option, but according to an agreement to be made that day, which, as a matter of fact, was not made. Not satisfied with the terms of the option, which provided for the payment of the balance of the purchase money, $775,000, by securing it by a bond and mortgage for ten years, the appellant had her attorney prepare and she signed an agreement in which there was a stipulation that the purchase money mortgage was to be accompanied by what is commonly known as a common bond, the said mortgage and bond, however, "to be limited to the premises " described.    This was a material variance from the option, which, on being submitted to Mrs. Black, she refused to sign.    Though the reason of her refusal may have been that the Mellons were not to get the property, the fact remains that the agreement was not signed by her; and as Mrs. Henry's insistence that the terms of the option should be changed was a legal rejection of it, Mrs. Black was not to be further bound by it, unless it was formally renewed.    The case, as presented, is one in which the receipt does not contain the terms of sale, which were to appear in an agreement subsequently to be executed by the parties, and, as it never was executed, there were no terms to be enforced.    It follows as a matter of course that no decree for specific performance could have been made.

The decree of the court below is affirmed and this appeal dismissed, at the cost of appellants.