# Barnes *v.* Rea, Appellant (No. 2).

*Contract—Option—Coal—Election to purchase.*

A contract under seal deliberately entered into whereby one party agrees to sell and convey coal to another upon certain terms and conditions, giving the other the option to purchase according to the terms of the agreement, is a contract binding on the landowner from the date of its execution, and becomes an absolute contract of sale binding on both parties if the election to purchase is made in accordance with its provisions.

Where an option for the sale of coal provides that a portion of the purchase money shall be paid within a time specified, time is of the essence of the contract, and failure to make the first payment within the time specified works a rescission of the agreement and relieves both parties from the performance of the covenant.

Where an owner of coal gives a written option to another for the purchase of the coal, and the agreement stipulates for the payment of a portion of the purchase money within a time specified, but no such payment or tender is made within the time stated, and subsequently .the optionee makes a tender, and several months thereafter the optionor acknowledges the original option agreement and the paper is recorded, the optionor will be deemed to have waived his right to rescind the agreement because payment was not made or tendered at the time specified.

*Statute of frauds—Memorandum in writing—Description in writing—Equity—Specific performance.*

A contract for the sale of land in which the description lacks the certainty necessary to locate it is void. Words intended to be descriptive but which do not in fact describe so that the parties themselves or the courts can certainly determine from the instrument itself the tract of land to be conveyed or its location, are not sufficient to base a decree for specific performance. Descriptive language applicable to any one of several tracts of land cannot be supplemented by parol evidence as to what tract was intended.

An agreement in writing to sell thirty-nine acres, more or less, of coal underlying a certain tract of land in a township, county and state named, without calling the tract by any name, or giving any adjoining owners, or fixing any natural boundaries, or designating in any manner in reference by deed, will, warrant, number, source of title, or in any other manner what tract of land was intended to be conveyed, is not a sufficient description under the statute of frauds.

Where on a bill in equity for specific performance of a contract to sell land, objection is made before the end of the trial to the admission of the contract because of insufficiency of the description of the land, the appellate court can, upon an appeal, decide the question of the sufficiency of the description upon its merits; and this is the case although the statute of frauds was not pleaded in the answer, and the question was not raised by demurrer.

Equity cannot decree specific performance of a contract in a case where the description of the real estate is insufficient.

Argued Oct. 21, 1907. Appeal, No. 170, Oct. T., 1907, by defendant, from decree of C. P. Greene Co., No. 74, in equity, on bill in equity in case of James R. Barnes v. J. L. Rea, J. M. Hustead and I. W. Semans. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Bill in equity for specific performance.

TAYLOR, J., found the facts to be as follows:

1. That Jesse L. Rea, one of the defendants, was seized in fee of a tract of land situate in Cumberland township, in Greene county, Pennsylvania, containing thirty-nine acres, more or less, and being so thereof seized, on June 2, 1899, entered into an agreement in writing with J. M. Hustead and I. W. Semans, two other defendants, to sell and convey, by deed with an abstract of title, to said Hustead and Semans, their heirs and assigns, all the nine-foot or Pittsburg vein of coal under the said tract of land, with the right to mine and remove all and every part of the same, without being required to provide for the support of the overlying strata or surface, and certain other mining rights, and reserving the privilege of operating for oil and gas on the same, which agreement and contract in figures, printed and written words, is as follows, to wit:

"This agreement witnesseth, That J. L. Rea of Green County, Penn., hereby agrees to sell and convey to J. M. Hustead & I. W. Semans, their heirs and assigns, all the Nine foot or Pittsburg vein of coal in and under that certain tract of land in Cumberland Township, Green County, Pa., bounded by lands of . . . . and containing thirty-nine (39) acres, more or less: The first parties reserving the privilege of operating for oil and gas on said farm. With the privilege of reserving one acre of coal under said farm; with the right to mine and remove all and every part of the same, without being required to provide for the support of the overlying strata or surface, and without being liable for any injury to the same to anything therein or thereon by reason thereof, and with all reasonable privileges for ventilating, pumping and draining the mines, and the right to keep and maintain roads and ways in and through said mines forever, for the transportation of the said coal, and of coal from and to other lands. For which the party of the second part, their heirs or assigns, shall pay sixty dollars per acre, for each and every acre, as follows: One-fourth of the purchase money at the time of making and delivering of said deed and the balance in three equal annual payments from the date of said deed with interest at the rate of 5 per cent per annum on deferred payments. An abstract of title to be made to said J. M. Hustead & I. W. Semans,

their heirs or assigns, when the first payment is made, and the others are secured by . . . . mortgage on the property hereby sold. The . . . . of the second part . . . . heirs or assigns, shall have the right to take . . . . by paying . . . . per acre therefor at the time of taking, and when a deed is made. It is expressly understood and agreed that if the first payment aforesaid is not made on the second day of October, A. D. 1899, or within ten days thereafter, this agreement shall be considered as rescinded, and neither party shall be bound thereby.

" Witness our hand and seal this second day of June, A. D. 1899.

" Signed, sealed and deliv-   J. L. REA         [Seal]
ered in the presence of         J. M. HUSTEAD &
. . . . . . . . . . . . . . . . . . . . . . . .   I. W. SEMANS      [Seal]
                       W. L. PRENTICE, Agt."

2. That in consideration of the said coal and mining rights said Hustead and Semans, their heirs and assigns, were to pay the sum of $60.00 per acre for each and every acre, as follows: " One-fourth of purchase money at the time of making and delivering of the deed, and the balance in three equal annual payments from the date of said deed, with interest at the rate of five per cent per annum on deferred payments, said deferred payments to be secured by mortgage on the property sold." That by the terms of said agreement said Jesse L. Rea agreed to convey said coal and mining rights and privileges to said Hustead and Semans, their heirs and assigns, and to make an abstract of title.

3. That on September 1, 1899, for value received, J. M. Hustead and I. W. Semans, assigned, transferred and set over to James R. Barnes, his heirs and assigns, all their right, title, interest, property, claim and demand whatsoever, of, in, to or out of the said agreement.

4. That on October 11, 1899, James R. Barnes caused a notice in writing to be served upon L. M. Rea to the effect that the contract had been assigned by Hustead and Semans to him, and further notifying him that he accepted to purchase said coal under the terms specified in said contract, which notice was in words and figures as follows:

"MR. J. L. REA,

" I hereby notify you that the option dated June 2, 1899, given by you to J. M. Hustead and I. W. Semans, for the coal therein mentioned in and under the tract of land in said option described, has been assigned to me by said Hustead and Semans, and I hereby further notify you that I accept to purchase said coal under the terms specified in said option.
" Oct. 3, 1898.                                        JAS. R. BARNES."

And that that notice of acceptance was served on Rea by Barnes in this particular case for the reason that Barnes was traveling through Greene county on the date of said notice, accepting other tracts of coal on which he had options.

5. That on June 20, 1900, said James R. Barnes, plaintiff, caused a tender of $600 in gold to be made to the defendant, Jesse L. Rea, and demanded a deed for said coal and mining rights, which money so tendered he refused to accept and he also refused to make, execute and deliver a deed and abstract of title, both of which (deed and abstract) he had agreed and bound himself to make; a record of said tender and refusal to accept on the back of the agreement is in words and figures as follows:

" July 20th, 1900. As attorney for Jas. R. Barnes I this day tendered J. L. Rea the sum of $600.00 in gold, as first payment on within coal and he refused to accept said money but admitted the amount was correct.

" THOS. S. CRAGO."

6. That on July 20, 1900, the said Jesse L. Rea, in due form of law, acknowledged the said contract to be his act and deed and desired the same to be recorded as such.

*Error assigned* among others was decree of specific performance.

*F. W. Downey*, with him *R. F. Downey*, for appellant.— We take the rule to be that the description of the real estate intended to be conveyed must be sufficiently definite that an officer could take a writ containing the description, and, by the description therein contained, locate the land : McCann v. Pickup, 17 Phila. 56 ; Mellon v. Davidson, 123 Pa. 298 ; Pat-

ton v. Develin, 2 Phila. 103 ; Soles v. Hickman, 20 Pa. 180 ; Cunningham v. Neeld, 198 Pa. 41.

It is a rule in equity that the specific performance of a contract will not be decreed unless its terms are clear and capable of ascertainment from the instrument itself : Weaver v. Shenk, 154 Pa. 206 ; Moore v. Small, 19 Pa. 461 ; Owens v. Goldie, 213 Pa. 579 ; Friend v. Lamb, 152 Pa. 529 ; Swayne v. Swayne, 19 Pa. Superior Ct. 160 ;  Baldridge v. George, 216 Pa. 231 ; Hammer v. McEldowney, 46 Pa. 334.

*Thomas S. Crago* and *James J. Purman,* for appellee.— The contract contains all that is necessary, and more too.   It is a good, sufficient and enforceable contract : Cadwalader v. App, 3 W. N. C. 1 ; Colt v. Selden, 5 Watts, 525 ; McFarson's Appeal, 11 Pa. 503 ; Tripp v. Bishop, 56 Pa. 424 ; Johnston v. Cowan, 59 Pa. 275 ; Smith & Fleek's App., 69 Pa. 474 ; Peart v. Brice, 31 W. N. C. 336 ; Troup v. Troup, 87 Pa. 149 ; Henry v. Black, 210 Pa. 620.

The statute of frauds was not pleaded : Luther v. Luther, 216 Pa. 1 ; Woods v. McMillan, 32 P. L. J. 363 ; Bishop v. Buckley, 33 Pa. Superior Ct. 123 ; Miller v. Piatt, 33 Pa. Superior Ct. 547.

OPINION BY MR. JUSTICE ELKIN, January 6, 1908 :

The third, ninth, tenth, eleventh, seventeenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth and twenty-fifth assignments of error, in one form and another, raise the question whether the agreement, the specific performance of which is sought to be enforced in this proceeding, was an option to purchase or an absolute contract of sale. All that has been said in Barnes v. Rea, ante, p. 279, applies to the facts of this case, and for the reasons therein stated we sustain these particular assignments.   It does not follow, however, that the decree must be reversed because of the error committed by the learned court below in holding that a binding contract had been entered into by the parties on the date of its execution, and that by reason thereof the covenants were mutual and dependent.   It was clearly within the right of appellant to waive payment as a condition upon which the option could be exercised and to treat it as a valid existing

agreement.  This he did by acknowledging the agreement to be his act and deed before a notary public, thus declaring on the very day tender of a sufficient amount to cover the first payment was made to him, that he desired the instrument to be recorded as and for his act and deed.

The Twenty-second assignment relates to that clause of the agreement which provides that if the first payment is not made on October 2, 1899, or within ten days thereafter, it shall be considered as rescinded and neither party shall be bound thereby. The third request for findings of law asked the court below to hold that this was an independent covenant not dependent upon any other stipulation or covenant in the agreement. The learned court refused to so find, saying that while this covenant was intended and may be taken to act as a spur to the vendee in paying the purchase money, the vendor could have the advantage of it only by tendering performance on his part.  This was error.  The agreement was an option to purchase, and the clause in question contained the condition upon which it could be exercised so as to make it an absolute contract, binding on both parties.  An option is not a sale. It is a right of election in the party taking the same to exercise a privilege, and only when that privilege has become exercised by acceptance in the manner specified in the agreement does it become an absolute contract, binding upon both parties.  It is simply a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a certain time.  By such an agreement he does not sell his land, nor does he at that time enter into an absolute contract to sell and convey, but he does agree to sell something ; that is, the right or privilege to buy at the election or option of the party with whom the agreement is made.  The optionee under such an agreement takes, not lands, nor even an absolute agreement that he shall have lands conveyed to him, but he does get something of value; that is, the right to call for a conveyance of the lands if he elects to purchase in the manner specified.  The owner parts with his right to sell his lands, except to the second party, for a limited period.  It is a unilateral agreement containing the terms and conditions upon which the optionor agrees to sell and convey his land not yet ripened into an ab-

solute contract to sell and convey on one side and to purchase and pay on the other. The covenants in such an agreement are not mutual, because mutuality imports an obligation on each party to do or permit to be done something in consideration of the act or promise of the other ; that is, neither party is bound unless both are bound : Rivers v. Oak Lawn Sugar Company, 52 La. Ann. 762 ; Sizer v. Clark, 116 Wis. 534 ; Hopwood v. McCausland, 120 Iowa, 218 ; Hanly v. Watterson, 39 W. Va. 214 ; Ide v. Leiser, 24 Pac. Repr. 695 ; McMillan v. Philadelphia Co., 159 Pa. 142. If such an agreement is based on a valid consideration it is a binding contract and may be enforced : Johnston v. Trippe, 33 Fed. Repr. 530 ; Williams v. Graves, 26 S. W. Repr. 334 ; Corson v. Mulvany, 49 Pa. 88 ; Smith and Fleek's Appeal, 69 Pa. 474; Yerkes v. Richards, 153 Pa. 646.

Nor must Henry v. Black, 213 Pa. 620, be understood as authority for a different doctrine. In the discussion of what constitutes notice and acceptance in that case, Minneapolis, etc., Railway Co. v. Rolling-Mill Co., 119 U. S. 149, was cited as authority for the rule that an offer to sell imposes no obligation until it is accepted according to its terms, and that so long as the offer has been neither accepted or rejected the negotiation remains open, and imposes no obligation upon either party ; the one may decline to accept and the other may withdraw his offer. What was said in the federal case, and the reference to that decision in our own case, can have no application to the facts of the case at bar, because the negotiations in that case related to the sale of personal property, while in this the agreement is to convey real estate. In that case one party by letter offered to sell a certain number of tons of rails at a fixed price per ton, giving the other party the right to accept the offer within a definite period. All the negotiations were conducted by correspondence, and these facts were relied on by the federal court to support the rule laid down. That rule can have no application to a contract under seal, deliberately entered into by parties whereby one agrees to sell and convey coal upon certain terms and conditions, giving the other the option to purchase according to the terms of the agreement. Such a contract is binding on the landowner from the date of its execution, and becomes an absolute contract of sale bind-

ing on both parties, if the election to purchase is made in accordance with its provisions.

In the present case, the agreement being an option to purchase and not an absolute contract to convey, time was of its essence, and failure to make the first payment within the time specified worked a rescission of the agreement, and relieved both parties from performance of the covenants. In other words, we hold that by the terms of the agreement itself, the payment of one-fourth of the purchase money within the time specified was the condition upon which the option could be exercised, and that it only becomes a contract inter partes when the election to purchase is made in the manner and upon the terms therein contained. While this would have been the situation of the parties if they had stood upon their legal rights as they existed on October 12, 1899, it appears neither party did so. On October 11, 1899, appellee caused to be served upon appellant a written notice of his election to take, which was followed by a tender of the amount of the purchase money due on July 20, 1900, at which time appellant in due form of law acknowledged the original agreement before a notary public. It does not appear that up to this time he did or said anything to indicate that he either demanded a rescission of the contract or treated it as rescinded. His acknowledgment of the original agreement several months after the date when he could have insisted upon a rescission, can only be construed as a waiver of his right to insist upon payment at the time specified and an affirmance of the contract. This he had the undoubted right to do, and there can be no question about his having done it. Having affirmed the agreement after he had the right to stand on a rescission, and having declared for public record that it was a binding existing agreement, he cannot now be heard to say that it had been rescinded at a prior date and neither party bound thereby. Both parties treated the agreement as a valid subsisting contract long after the time when appellant could have claimed a rescission, and we know of no reason why the law should undertake to say to them that the agreement was rescinded when they by their own acts declared it was not.

The fourth, thirty-first and thirty-sixth assignments raise the question of the sufficiency of description and statute of

frauds as applied to the facts of this case.   A contract for the sale of land in which the description lacks the certainty necessary to locate it is void.   Words intended to be descriptive, but which do not in fact describe so that the parties themselves or the courts can certainly determine from the instrument itself the tract of land to be conveyed, or its location, are not sufficient to base a decree for specific performance.   Descriptive language applicable to any one of several tracts of land cannot be supplemented by parol evidence as to what tract was intended : Mellon v. Davison, 123 Pa. 298 ; Soles v. Hickman, 20 Pa. 180 ; Peart v. Brice, 152 Pa. 277.

Ferguson v. Staver, 33 Pa. 411, and Smith and Fleck's Appeal, 69 Pa. 474, are authority for the rule that parol evidence is admissible to supply the particular description of lands when the contract relied on described the subject-matter of the grant sufficiently definite to fix its location.   The question to be determined in this case is whether an agreement to sell thirty-nine acres, more or less, of coal underlying a certain tract of land in Cumberland township, Greene county, Pa., without calling the tract by any name, or giving any adjoining owners, or fixing any natural boundaries, or designating in any manner by reference to deed, will, warrant, number, source of title, or in any other manner what tract of land was intended to be conveyed, is a sufficient description under the statute.   Or is such a description a sufficient identification of the property, the subject-matter of the grant, as to make it permissible to supply the particular description by parol evidence ?   We think not.   When the statute required the contract to be in writing, it meant that the complete contract in all its essentials should be set forth in the writing itself.   It must be self-sustaining under the rule of all our cases.   Under the facts of this case parol evidence is not admissible to supply the particular description of the land, because the agreement lacks the certainty necessary to identify and locate the land as a whole. It is very earnestly contended that appellant cannot insist upon this position now, because the statute was not pleaded in the answer, and that this question should have been raised, if at all, by demurrer.   The question of the sufficiency of the description was raised in the court below after the admission of the agreement in evidence had been objected to, and before

the trial closed, and we can see no reason why this question should not be decided upon its merits now. The question of jurisdiction was raised by the tenth paragraph of the answer to the bill, and about the only question of jurisdiction that could arise under the facts of this case is whether the agreement was within the statute of frauds. In Hammer v. McEldowney, 46 Pa. 334, it was held that equity would not decree specific performance of a contract in a case where the description of the real estate was insufficient.

We cannot agree, therefore, that this question was not raised in the court below in such a manner as to have it decided here, and for this reason the decree must be reversed.

Decree reversed at the cost of the appellee.