314

*Carl A. Belin,* for plaintiff.
*Robert V. Main,* for defendant.

PENTZ, P. J., December 21, 1955.—Plaintiff, The Daniels Company, Contractors, Inc., filed petition on September 15, 1955, requesting declaratory judgment to determine the meaning of one clause in a contract entered into under date of July 30, 1954, between plaintiffs, the Daniels Company, Contractors, Inc., and James K. Nevling, trustee for the benefit of James C. Walker, and as a trustee for the benefit of Charles Alan Walker and Susan Louise Walker, and as trustee along with Ray S. Walker and Louise S. Walker for the benefit of Lenore Ann Walker.

Defendant filed his answer to the petition and incorporated therein new matter.

Plaintiff then filed preliminary objections to the new matter, and at the same time, filed a motion for a judgment on the pleadings.

The case was set for argument October 20, 1955, and at the time of argument, defendant presented motions to strike off the two motions filed by the plaintiff.

The first consideration is the situation created by the pleadings filed and that will be disposed of before passing to the question presented by the pleadings, which are found to be in order.

The petition is based upon a contract between the parties, dated July 30, 1954, for the sale and construction of a coal washing system by plaintiff for defendants. So far as the record indicates, this system was constructed and completed in accordance with the specifications and has been paid for by defendant. The fourth paragraph of the petition sets forth the clause of the contract in dispute, as follows, appearing in the contract under the words "Auxiliary Agreements":

"The Contractor agrees to supply the Purchaser with two (2) additional DMS Washing Systems at the Contractor's cost plus 10% within 24 months of the date of this agreement."

The controversy, it is then averred, arises over the interpretation of the meaning of this particular clause. Plaintiff contends it constitutes a binding contract on defendant to purchase two additional washing systems, within the 24-month period. Defendant insists that the clause is an option only and does no more than give defendant the right to purchase at any time within the 24-month period the two additional washing systems.

The other essential averments in the petition are to the effect that if the clause is construed to mean a binding purchase agreement, plaintiff intends to enforce all his rights thereunder and bring action for damages in the event defendant does not comply therewith; that a determination by declaratory judgment, one way or the other, will end the dispute; that to wait until the expiration of the 24 months to bring an action great injury will be inflicted upon both parties.

Defendant in his pleading, designated an answer, in which is incorporated new matter, corrects the name and status of the party-defendant, without demurring to plaintiff's designation of defendant and his status. Defendant then denies each and every averment in the petition; admits the agreement to purchase one washing system as contained in the agreement of July 30, 1954, together with the clause therein contained as set forth and quoted in paragraph four of the petition, but sets forth additional items to be added to the contract, as disclosed in three letters attached to the answer, and designated defendant's exhibits A, B and C. Whether or not these three letters alter, vary or change the contract of July 30, 1954, is not material to the existing issue. None of these letters refers in any way to the particular clause in question. They are all in regard to additional equipment to be added to the washing system contracted for

in the agreement of July 30th. Exhibit C reserves to defendant the right to assign his rights under the agreement of July 30, 1954 to certain specified persons, to which the petitioner agrees, and which right to assign, defendant, in his answer, adds to the clause in question, but does not assert that clause is in any way affected, other than that defendant has a right to assign all of his rights in the whole contract.

In the body of the answer, defendant sets up a breach of warranties by plaintiff provided in the original agreement, and then asserts there is a dispute between the parties concerning the length of time the warranties shall exist. Plaintiff takes the position the warranties terminated July 15, 1955, and defendant contends that they continue indefinitely.

Under the heading of new matter, defendant again asserts a breach of the warranties and the dispute between the parties concerning the date the warranties expired, and prays for a declaratory judgment to first dismiss the petition of the plaintiff, or, to decree, (in effect) the clause in question is an option, or a right to purchase the two additional washers at the contractor's cost plus 10 percent within 24 months, and third, to determine the length of time the warranties exist.

Following the filing of the answer to new matter, the subsequent pleadings mentioned were filed.

The petition asks for a declaratory judgment setting forth the reasons therefor, and although no reference is made to the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended, 12 PS §§831-853, the petition falls within the provisions of the act.

The procedure to be followed, in any petition for a declaratory judgment, is defined by the Act of May 22, 1935, P. L. 228, 12 PS §§847-853, added as a supplement to the Uniform Declaratory Judgments Act enacted June 18, 1923, P. L. 840, 12 PS §§831-846,

847-853. Before the adoption of the supplement of 1935, supra, no procedure had been defined.

Section 2 of the Supplemental Act of 1935 was amended by the Act of April 13, 1943, P. L. 43, 12 PS §848, providing for the matter of service.

The first section of the supplemental act 12 PS §847, defines the form of petition. The fifth section defines the answer, as follows, 12 PS §851:

"A defendant may by his answer, without first replying to the averments of fact in the petition, raise any question of law which goes either to the jurisdiction of the court or to petitioner's legal right to have the disputed matter determined in this character of proceeding, and any such question of law may be set down for hearing and disposed of in limine. If in the opinion of the court, the decision of the question, thus set for hearing, requires the determination against the petitioner of the point or points there raised, the court may make such order thereon, as the situation demands. If the court shall decide such points so raised against a defendant, he may, within fifteen days, file an answer to the averments of fact in the petition, and the case shall be set down for a hearing on the merits of the controversy." Act of May 22, 1935, P. L. 228, sec. 5.

Giving effect to the provisions of section 5 as quoted, it is obvious the new matter, the preliminary objections, the motion for judgment on the pleadings, and the motion to dismiss the same, are not authorized by the Uniform Declaratory Judgments Act. These pleadings, from the "New Matter" on, only serve to confuse the issue. Although the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558, was enacted after section 5 of the Uniform Declaratory Judgments Law was in effect, subsection 8 of section 58 of the Statutory Construction Act expresses the policy of the law prior thereto, namely that statutes

shall be so construed as to effect their objects and promote justice. One great aid to the promotion of justice is by the elimination of confusion. Therefore, that portion of the pleadings beginning with "New Matter", up to and including the two final motions to dismiss will be eliminated. In Philadelphia Mfrs. Mut. Fire Ins. Co. v. Rose, 364 Pa. 15, the court of common pleas treated a proceeding under the Declaratory Judgments Act as a bill in equity. The Supreme Court noted that although it had been handled as though it were a complaint and proceedings in equity, the appeal would be considered and treated as though originating under the Uniform Declaratory Judgments Law.

In Lifter Estate, 377 Pa. 227, and in Eureka Casualty Co. v. Henderson, 371 Pa. 587, it is decided that the granting or refusing to grant a judgment under the Uniform Declaratory Judgment Act is a matter purely for the discretion of the Court. In Melnick v. Melnick et al. 147 Pa. Superior Ct. 564, it is stated that it is the duty of the court to follow the provisions of the Uniform Declaratory Judgment Act if the proceeding falls within the act.

The proceeding should not be dismissed because in one contingency it may be necessary either by supplementary proceedings in the case, or by independent action based upon what may be adjudicated in the case, to determine the amount of the damage payable, (Philadelphia Mfrs. Mut. Fire Ins. Co. v. Rose, 364 Pa. 15, and Burke v. Pittsburgh Limestone Corp., 375 Pa. 390) the proceedings for the declaratory judgment will be accepted, even though under the facts a common-law action could have been brought.

Therefore, it becomes incumbent upon the court to pass upon the clause of the contract, of which both parties, in effect, request the interpretation. Whether or not such interpretation will end the controversy, must be

considered in the light of the expressions contained in Philadelphia Mfrs. Mut. Fire Ins. Co. v. Rose, supra, and Burke v. Pittsburgh Limestone Corp., supra.

The portion of the contract whose meaning is to be determined, is all that is presented. There are no disputed facts, technical terms, or words of art. The interpretation to be applied is such interpretation as may be derived from giving the meaning to the words placed upon them in ordinary usage, and that interpretation is a matter of law for the court and not for a jury under these circumstances: Currie v. Land Title Bank & Trust Co., 333 Pa. 310, and Fischer & Porter Co. v. Porter, 364 Pa. 495, and Korr v. Butz et al. 156 Pa. Superior Ct. 516.

In Barnes v. Rea, 219 Pa. 279, the question to determine was whether or not the agreement was an option, or an absolute contract. While the case concerned the sale of land, the same rules of interpretation are applicable to the case at bar. The Supreme Court states on page 284 the rule, "Whether an instrument in writing transferring an interest in real estate shall be construed as an absolute conveyance, or only an agreement to convey, or an option to purchase, depends, not on any particular words or phrases, but on the intention of the parties to be derived from the instrument itself by a consideration of all its parts, and, when it is doubtful, from the circumstances attending it . . . An option is an unaccepted offer to sell and convey within the time fixed and upon the conditions set forth in the written agreement . . ."
And, on page 285, "An option is an unilateral agreement, binding upon the optionor from the date of its execution, but does not become a contract inter partes in the sense of an absolute contract to convey on the one side and to purchase on the other until exercised by the optionee."

In the second case of Barnes v. Rea, also in 219 Pa. 287, the Supreme Court stated on page 293,

"An option is not a sale. It is a right of election in the party taking the same to exercise a privilege, and only when that privilege has become exercised by acceptance in the manner specified in the agreement does it become an absolute contract, binding upon both parties. It is simply a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a certain time. By such an agreement he does not sell his land, nor does he at that time enter into an absolute contract to sell and convey, but he does agree to sell something; that is, the right or privilege to buy at the election or option of the party with whom the agreement is made."

See, also, McHenry v. Mitchell, 219 Pa. 297, ALI, Restatement of the Law of Contracts, §230, §235(a), (c), (d).

Considering the contract as a whole as contained in plaintiff's exhibit A, there appears in the contract between plaintiff, designated Contractor, and defendant, designated Purchaser, first, an agreement for the construction of a DMS Washing System, with all of the various parts, appliances and devices designed and specified, to produce a certain quality of coal cleansed of impurities within a specified percentage. Considering the clause in question, with the entire contract, it is an inevitable conclusion that it is an option, as defined in Barnes v. Rea, supra, giving to defendant, as purchaser, the right to accept within two years the two washing systems at contractor's cost plus 10 percent.

The parties, in making a contract to purchase one washing machine, which was installed and presumably paid, clearly indicate a great many technical details must be determined before either party will

know what the one is to furnish and the other to buy. The subject matter, washing machine, and the purpose of such washing system, indicates that a contract to supply and erect two of the systems, was not intended by the parties to be contained in the one sentence of three or four lines, composing the clause in dispute, nor is it necessary to resort to parol testimony concerning the circumstances, purpose of the parties and their intention, at the time of the execution of the contract of July 30, 1954.

The clause in consideration is contained under a heading "Auxiliary Agreements". However, in considering this clause, the entire contract must be considered to determine the legal effect and intent of the parties. If this cannot be resolved from the entire contract, then and not until then, can the circumstances surrounding the execution of the contract be produced to aid in the determination.

Considering the contract as a whole, particularly the detailed description of the several appliances and devices to be used, in which a great many technical terms appear, it is difficult to arrive at a conclusion that the clause in question is a purchase contract. To arrive at such conclusion, the difficulties immediately arising are apparent when the decision in Heat & Power Corp. v. Foust Distilling Co., 378 Pa. 133, is read.

On the other hand, the plain meaning of the terms used, indicates, in view of the entire contract, that if the purchaser or buyer desires two additional washing machines he must accept at the price thereof within two years, with all of the other necessities of such a washing system, to be determined after thorough examination of the location, and the quality of coal to be produced by this system.

Therefore, the clause in question is an option so-called and not an agreement to purchase: Barnes v.

Rea (1), supra; McHenry v. Mitchell, supra; Fischer & Porter Co. v. Porter, supra; Currie v. Land Title Bank & Trust Co., supra, and Korr v. Butz et al., supra.

### Judgment

Now, December 21, 1955, judgment entered for the defendant, James K. Nevling, trustee under agreement of June 15, 1948, for benefit of James C. Walker and others.

Exception noted for plaintiff and refused.