## Troup *versus* Troup.

A. agreed in writing, and under seal, to sell a tract of land to B. The agreement contained all the necessary features to take it out of the Statute of Frauds, except that the description of the land was in these words: " A tract of three acres of land, more or less, situate in the township aforesaid." The only tract which A. owned in said township was one of sixteen acres, and B. alleged that three acres of this tract was intended to be conveyed. In ejectment, at the trial, it appeared that shortly after the execution of the agreement B. entered into possession of three acres of said tract, and made improvements thereon, and that he had paid a part of the purchase-money. There was evidence, also, that B. had taken possession in pursuance of the agreement, and that A. had by parol designated the boundaries of the land conveyed. The court below charged that the agreement was defective in not describing the tract; amounted to no more than a parol sale, and *was within* the Statute of Frauds, and directed a verdict for A. *Held,* that this was erroneous, and that there was sufficient evidence to induce a chancellor to decree specific performance, and the case should have gone to the jury.

May 11th 1878. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *York county :* Of May Term 1878, No. 118.

Ejectment by Catherine Troup against Jacob Troup and others.

The plaintiff was the widow of Oliver Troup and claimed the land in question, by reason of its having been appraised and set apart to her under the provisions of the Act of April 14th 1851. The defendants were the heirs of Emanuel Troup.

Emanuel Troup owned a tract of land containing sixteen acres, and or. the day of its date, entered into the following agreement:

"Article of agreement concluded upon this 26th day of December 1868. Between Emanuel Troup, of the township of Fairview county of York and State of Penna of the one part and Oliver Troup of the same place the second party, the first party for the consideration herein doth sell unto the second party, a tract of about three acres of land more or less, situate in the township aforesaid, for which the second party agrees to pay to the first party the sum of twenty-five dollars per acre, as follows to wit a spring wagon of the value of twenty-five dolls. and the balance of the purchase-
　　　　　　　　　　　　Three
money is to be paid in ∧ equal annual payments, without Inters, and the title the first party agrees to deliver on or before the first of April 1869, or the first of May 1869, and possession is to be given immediately after the date of the agreement, vz. Decmb. 26th 1868, the wood on part of the premises, the first party reserves for his own use and liberty to take it off when he requests it without hindrance in a reasonable time witness our hands and sealz the date above.

Witness　　　　　　　　　　　EMANUEL TROUP (seal).
JOHN EICHELBERGER.　　　　　OLIVER TROUP (seal).

[Troup *v.* Troup.]

It appeared that immediately after the execution of this agreement, Oliver Troup took possession of the land in dispute; that he made valuable improvements thereon, and that as part of the purchase-money, he had given to Emanuel Troup the spring wagon mentioned in said agreement. It was contended by the defendants, however, that he had not entered into possession in pursuance of the agreement, and that the boundaries of the land were not sufficiently designated in said agreement. They submitted several points embracing these propositions, to which the court, Fisher, P. J., replied, that under their view of the case it was not necessary to give specific answers, and then charged as follows:—

"The written article of the 26th of December 1868, between Emanuel Troup and Oliver Troup, and which has been given in evidence to you, is so defective in not giving a description of the land intended to be conveyed, as makes it nothing more than part of a parol contract. No description of the land intended to be conveyed is contained in it except that it is in Fairview township, in this county.

"In addition to this the parol proof does not make out such a parol contract and such performance and execution of it as would induce a chancellor to decree its specific performance. Your verdict will therefore be for the defendants."

The evidence produced at the trial is sufficiently stated in the opinion of this court.

The verdict was for the defendants, and the plaintiff took this writ, assigning for error the refusal of his points and the foregoing charge.

*Cochran & Hay*, for plaintiff in error.—A writing which shows the intention of the parties and indicates the terms of a contract, the land to be conveyed and the price, will satisfy the Statute of Frauds. The boundaries of the land need not be precisely ascertained: Colt *v.* Selden, 5 Watts 525; McFarson's Appeal, 1 Jones 503; Smith and Fleek's Appeal, 19 P. F. Smith 474; Shoofstall *v.* Adams, 2 Grant 209; Ross *v.* Baker, 22 P. F. Smith 186; Evans *v.* Prothero, 13 Eng. Law & Eq. Rep. 163. If the contract itself was not sufficient it certainly was after entry and improvements made: Bowser *v.* Cravener, 6 P. F. Smith 132; Martin *v.* McCord, 5 Watts 493.

*J. W. Latimer*, for defendants in error.—A contract is void under the statute when the consideration or the subject-matter is undefined. When the law requires the contract to be in writing it means that the complete contract must be proved by the writing: Soles *v.* Hickman, 8 Harris 180. It cannot rest partly in parol: Parkhurst *v.* Van Cortlandt, 1 Johns. Ch. 273, 281. Where the subject-matter, the land, is described, parol evidence is admissible to apply the description; but never to furnish the description, and also to apply it: Ferguson *v.* Staver, 9 Casey 413; Smith and

Fleek's Appeal, 19 P. F. Smith 474.   The agreement must be so precise as to enable the inquirer to ascertain from it the terms of the contract, the land to be conveyed and the price to be paid: McFarson's Appeal, 1 Jones 503, 510; Blagden v. Bradbear, 12 Vesey Jr. 466.   To take the case out of the statute, the plaintiff must prove possession taken under and in pursuance of the contract, and it is the notoriety of the change of possession that, more than anything else, takes a case out of the Statute of Frauds: Ackerman v. Fisher, 7 P. F. Smith 457.   The possession taken must be exclusive of the vendor: Blakeslee v. Blakeslee, 10 Harris 237; and by boundaries distinctly ascertained: Frye v. Shepler, 7 Barr 91; must be continuous: Rankin v. Simpson, 7 Harris 471; and a continuance of former possession is insufficient: Christy v. Barnhart, 2 Harris 260; Greenlee v. Greenlee, 10 Id. 226; and improvements, such as clearing and fencing are not sufficient, if they can be compensated in damages: McKowen v. McDonald, 7 Wright 443.

Mr. Justice PAXSON delivered the opinion of the court, May 20th 1878.

The agreement between Emanuel Troup and Oliver Troup, dated the 26th of December 1868, lacks but one feature to take it out of the Statute of Frauds.   It is not only in writing, but is under seal; it sets forth the subject of the contract; three acres more or less of land in Fairview township, York county; the consideration and time and mode of payment; the date when the conveyance was to be made, with the further stipulation that the possession was to be delivered immediately upon the execution of the agreement.   We have here all that has been held to be essential, excepting the designation of the land intended to be conveyed.   That is not described otherwise than as a tract of about three acres of land in Fairview township, York county.   If at the time of the agreement, Emanuel Troup had been the owner of no other land in this township but a single tract of three acres, there would have been less difficulty. In such case, the maxim, *certum est quod, certum reddi potest* would apply.   The fact was that he owned a large tract of land in said township, of which it is alleged the three acres in dispute formed a part.   It is undoubtedly true as a general rule, that when the law requires the contract to be in writing, the entire contract must be proved by the writing.   So much was said in Soles v. Hickman, 8 Harris 180.   When, however, the subject-matter has been sufficiently described as to be rendered certain it has been held sufficient: Smith and Fleek's Appeal, 19 P. F. Smith 474.   There is nothing upon the face of this agreement to enable us to reduce the description to certainty, and to say which three acres of the larger tract were intended.   But the agreement was for immediate possession, and if it was accompanied by the delivery of possession under it,

[Troup *v.* Troup.]

the lines designated, and improvements of a permanent character
made upon the premises, and part payment of the price, we think
the case would come within the exceptions to the rule, and be taken
out of the statute.   The learned judge of the court below withdrew
these questions of fact from the jury, and directed a verdict for the
defendants, upon the ground that the agreement was so defective as
to amount to nothing more than a parol contract.   This ruling forms
the basis of the different assignments of error.

   This brings us to the important question, was the evidence of
delivery of possession under the agreement and of the designation
of the property by the parties, sufficient to induce a chancellor to
decree specific performance?   For if it falls below this standard the
court was not bound to submit it to the jury.   To determine this
question, it is necessary to refer briefly to the evidence.   Tobias
Hartman testifies that Oliver had possession of the land he bought
from his father.   "He put on a house; he farmed over it and
lived in the house."   Peter Shindle testifies: "I had a talk with
Emanuel Troup in his lifetime whilst Oliver was living on the land.
He told me the fence, where the stones lay, was the line; I know
where the fence was; it begins on Hartman's line and runs across
to the other corner between him and his son Oliver.   He told me
from the end of that stone fence the line run to Haldeman's line,
between him and the line of Oliver.   Fruit trees were planted by
Oliver while he was living there; I helped to put up the house; it
was put up in March 1869; Oliver moved there that summer; he
(Emanuel) told me he took a wagon from Oliver for $25 for the
land he bought from his father; he was farming it at the time he
bought it from his father, and living in the house that was removed
before it was removed.   Can't tell when the old man told me he got
the wagon in payment.   * * * I saw the wagon in the old man's
possession afterwards."   Josiah Danner testifies: "Oliver was fix-
ing the garden fence on this land.   Old man Troup came there whilst
we were at work and invited me to his house; this was after the
new house was built.   I agreed to go with him, and Oliver went also.
There was a path cut from Oliver's house to the old man's.   As
we passed up we came to the corner of the stone fence; we stopped;
I then asked the old man Troup where Oliver was to have his land;
then he told me the line was from the stone fence to Tobias Hart-
man's line, and from thence to a white oak tree at a corner, and
then he showed me the line from the stone fence to Jacob Halde-
man's land.   There was a fence above, and this line was to be straight
with that fence to Haldeman's line; the two fences formed a corner
where we stood; then when it comes to Jacob Haldeman's line it
ran down to the same white oak tree."   Witness shown paper, and
continues: "This presents exactly the lines that the old man
showed me.   Oliver was present.   I know where the oak tree is, and
I walked around the lines; Emanuel Trout went with me, and

showed me the lines, and they compared with the lines on the draft. * * * Whilst Oliver lived there he built a hog-pen for the hogs, and a kind of shed-roof attached to the hog-pen, and paled or fenced up the garden and planted fruit trees, pears and apples. * * * I helped him some at the cow-stable. Andrew Hutton was the carpenter at the hog-pen. He went to live there after he bought the land; put up the house after he bought it. * * * The time we were looking over the land the old man said Oliver had given him a wagon for $25, as part pay for the land, and the old man he said that it was in pay of the land. I was there when the old man and Oliver both had corn in the land. I know where the old man had his, and Oliver had his. Oliver planted in the way or direction of the stone fence; the old man planted on the other side and ran the way towards the Haldeman line; a space was left where the line was to go along; I saw Oliver cultivating his on the side he bought." To rebut this evidence, the defendants called but a single witness, Josiah Danner, but whether the same Josiah Danner who had been previously examined for the plaintiff this record does not disclose. He testified to nothing material beyond a conversation with Oliver, in which the latter said "he had got it (the land) five years for clearing it off; this was said after the house was built. He did not tell me he had it for five years and afterwards got it from his father." The plaintiff then recalled Josiah Danner, who said: "When I was living with Oliver, in the conversation that was had between Oliver Trout and the old man and myself, I said 'How is it about this contract about the farming of the land?' Oliver said he had the contract between him and the old man about the land for a length of time, I can't say how long. He said that contract between him and his father since he bought it was nothing any more; was disannulled. I then said to the old man Troup, 'Is that so?' He said 'That is our agreement.'" This explanation of the matter, looking at all the circumstances of the case, appears reasonable. It is consistent with the other facts in evidence, and upon a bill for specific performance would not be without weight with a chancellor. We must not overlook the fact that the contract is in writing and undisputed, thus removing all reasonable grounds of suspicion as to the entire good faith of the claim. We think there is such a preponderance of evidence as to entitle the case to go to a jury. If possession was delivered under the agreement, the lines designated, improvements made, and a part of the purchase-money paid, of which there is evidence, it is sufficient to take the case out of the statute. The jury must pass upon the facts, and it was error to withdraw the case from their consideration.

The court did not pass upon the sufficiency of the tender, nor whether a tender before suit was necessary. As the record stands at present, these questions are not properly before us. It will be for the court below to decide them under the facts as they shall be.

[Troup *v.* Troup.]

presented upon another trial, as well as to consider the question whether the case is one for a conditional verdict.

The judgment is reversed, and a *venire facias de novo* awarded.