# Welsh's Estate.

*Vendor and vendee—Statute of frauds—Memorandum in writing—Description of land—Evidence—Specific performance—Equity.*

1. Specific performance of a contract for the sale of real estate will be enforced, although the memorandum in writing merely refers to the property as a house and lot on a certain street, if it appears from extrinsic evidence that the vendee went into possession of a house on the street named, paid numerous installments of the purchase money, remained in possession until the proceedings for specific performance were begun, and was recognized by the vendor as owner in certain probate proceedings in the orphans' court.

2. In such a case the vendee will not be presumed to have abandoned the title merely because after a certain period he failed to pay taxes and the balance of purchase money. Forbearance on the part of the vendor is not, in such a case, the equivalent of legal assertion of title; nor is there any equity in the vendor from the fact that the property greatly enhanced in value during the long period of the vendee's possession.

Submitted April 28, 1910. Appeal, No. 110, April T., 1910, by Harriet J. Williams, administratrix, from decree of O. C. Allegheny Co., Feb. T., 1908, awarding specific performance in estate of Andy Welsh, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Petition for specific performance. Before HAWKINS, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree awarding specific performance.

*R. B. Petty* and *John O. Petty*, for appellants.—The writing does not designate the land and is therefore unenforceable as a written contract: Soles v. Hickman, 20 Pa. 180; Greenlee v. Greenlee, 22 Pa. 225; Ferguson v.

Staver, 33 Pa. 411; Burns v. McCabe, 72 Pa. 309; Troup v. Troup, 87 Pa. 149; Walters v. McElroy, 151 Pa. 549; Rineer v. Collins, 156 Pa. 342.

The writing does not designate the land and is therefore unenforceable as a written contract: Soles v. Hickman, 20 Pa. 180; Mellon v. Davison, 123 Pa. 298; Ranney v. Byers, 219 Pa. 332; Peart v. Brice, 152 Pa. 277.

The purchase money was not paid within the time stipulated: Bodine v. Glading, 21 Pa. 50; Fidelity Ins., Tr. & Safe Dep. Co.'s App., 191 Pa. 500.

*Marron & McGirr*, for appellee.—The description of the lot was not too indefinite to enforce specific performance: Phillips v. Swank, 120 Pa. 76.

We claim that the delay of the plaintiff was not a bar to specific performance in this case: Miller v. Bear, 3 Paige Ch. 466; Scarlett v. Hunter, 3 Jones Eq. 84 (N. C.); Van Campen v. Knight, 63 Barb. 205; House v. Beatty, 7 Ohio, 417; Hatton v. Johnson, 83 Pa. 219; Remington v. Irwin, 14 Pa. 143; D'Arras v. Keyser, 26 Pa. 249; DuBois v. Baum, 46 Pa. 537; West Hickory Mining Assn. v. Reed 80 Pa. 38.

OPINION BY BEAVER, J., March 3, 1911:

The questions involved in this appeal are raised by a petition for specific performance of a contract in writing for the sale of certain real estate therein partially described. The contract follows: "Pittsburgh, March 3rd, 1890. John E. Williams sold to Andy Welsh house and lot on Acorn Street for the sum of Five Hundred Dollars, to be paid Fifty Dollars down on getting possession; the balance to be paid Five Dollars per month, with interest of $2.00 per month for the first year. The interest to be readjusted one year from date.

"The deed to be given when the money and interest are paid in full.

"Balance in full to be paid in five years.    John E. Williams."

Was the administrator of Welsh entitled to a decree of specific performance under the terms of this agreement and the facts as found by the court?

The court below found as facts that "in pursuance of this contract, Welsh made the cash payment of $50.00, went into possession of a house and lot on Acorn street and paid monthly installments of principal and interest until July, 1893. These payments are credited in Mr. Williams' handwriting in the book immediately following the contract of sale and monthly balance struck, the last of which shows $138.00 due. It does not appear that the Welsh's paid any taxes; but it was shown that the Williams' paid them from 1901 onward. No action was taken to compel further payments. Welsh continued in possession until he died in 1904 or 1905; his widow succeeded him as his only heir and remained until her death in 1907, when she was succeeded by her nieces as next of kin. In the meantime, Mr. Williams died; and in February, 1906, a petition describing the location of the lot was presented on behalf of Mrs. Williams as administrator of the estate, requesting the execution of her husband's contract of sale. At the court's suggestion, action on this petition was suspended until letters should be taken out on Mr. Welsh's estate. Such letters were accordingly taken out; but when the administrator sought to have probate proceedings resumed and tendered the balance due, Mrs. Williams refused. She had discovered in the meantime that in municipal proceedings for opening a street through the lot damages amounting to $3,200.00 were awarded."

An examination of the testimony indicates that these questions of fact are sufficiently established to justify their finding by the court. There are some slight discrepancies in the testimony but not sufficient, in our judgment, to warrant us in raising any serious question as to the validity of the facts found. They justify, in our opinion, the opinion and decree of the court.

The question of the sufficiency of the description of the

lot sold is not avoided by the court in its opinion. It is said: "It must be conceded that the description contained in the contract of sale is too indefinite, standing by itself, to enable the court to enforce specific performance. It might apply to any one of the several houses owned by the vendor on Acorn Street. But the conduct of the parties themselves has left no doubt of the identity of the house and lot sold. The facts that the Welsh's immediately on the execution of the contract moved on the premises now claimed and continued in uninterrupted occupancy until the institution of these proceedings shows their identification on the subject of sale: Troup v. Troup, 87 Pa. 149. The facts that the Williams' not only received a long series of installments of purchase money and interest from the Welsh's, the vendee in possession of this particular house and lot; Brown v. Bennett, 75 Pa. 420, and took no action of dispossession during a period of seventeen years, but endorsed proceedings for probate, are sufficient evidence of recognition of title."

It was not urged in the court below or here that the children of Williams had not joined with their mother, as administratrix, in the petition for specific performance, and that the failure of the Welsh's to pay taxes and the balance of purchase money was evidence of abandonment of title. As to these questions, it was said by the court below: "It was not necessary that the Williams' children should join with their mother in the petition for probate. They were consulted and their approval was consistent with their father's acts of recognition. The suggestion that failure to pay taxes and the balance of purchase money due is evidence of abandonment of title is answered by the fact of undisputed possession for fifteen years. Forbearance on the part of the Williams' is not the equivalent of legal assertion of title. So the suggestion of an equity from change of circumstances arising fifteen years after the making of the contract of sale finds no support in reason or authority. The vendee had a presumptive right to the increase in the value of the land bought which

could not be defeated by mere failure to pay the balance of unpaid purchase money. The vendor might have ousted him for non-payment and thus become entitled to subsequent increase, but his failure to do so was an implied waiver and the balance of the purchase money tendered was the measure of his interest."

Phillips v. Swank, 120 Pa. 76, is a striking example of the cases in which it is held that contracts in writing may be supplemented or rendered certain as to persons or things which are to a certain extent uncertain in the writing itself. In that case the writing under consideration was as follows:

"August the 20, 1850:—i do herby agree tht Jonathan Phillips shall have the land wich he is posetion of now for the labor he don for me over age and this shall be his wrecept for all my writes and claims against the land.

"(Signed) DAVID PHILLIPS."

In commenting upon this writing, Mr. Justice CLARK, who delivered the opinion of the Supreme Court, said: "Nor do we regard the case as coming within the statute of frauds. It is true, a written contract, in order to comply with the statute, must be in some sense self-sustaining. 'It would be mere folly,' as was said in Morris v. Stephens, 46 Pa. 200, 'to make a conveyance to my next door neighbor, or to the person now sitting at the table with me, by this description, instead of by name; the law could hardly be expected to enforce such a conveyance in the face of the statute which requires conveyances to be in writing and to be self-sustaining, with the exception only of such necessary uncertainty as is involved in their application to persons named and things described.' There is, as intimated in the language of the case referred to, a necessary uncertainty in writings, involved in their application, not only to persons but to things described therein. If there are two or more persons of the same name, it may be necessary by parol proof to fix the identity of the persons intended, or the thing concerning which the parties propose

to contract may be described in such general terms as to require parol proof to identify the particular subject of the contract. It is quite impossible in most cases so to describe land as to avoid the necessity of parol proof for its identification; for, whether it be described by metes and bounds, by monuments erected upon the ground, or by adjoiners, its identification necessarily becomes the subject of parol proof. In this instance, the lands agreed to be conveyed were described as the land of which Jonathan was at the time in the actual occupancy and possession; this was no more open to the objection stated than if it had been described by its adjoiners, or by marks upon the ground."

As to the question of the balance of the purchase money due, the court adopted the balance as struck by the vendor himself as the proper amount, and we can see no objection to this, inasmuch as it would seem to be an amount agreed upon between the parties.

Any discrepancy between the findings of the court, as to dates and the facts as they actually exist, is immaterial, even if there should be such discrepancy. It is not in any sense vital.

Decree affirmed and appeal dismissed at the costs of the appellant.