BAXTER v. CALHOUN et ux.

(District Court, W. D. Pennsylvania.   April 21, 1915.)

No. 13.

1. FRAUDS, STATUTE OF ⬾110—SPECIFIC PERFORMANCE ⬾29—SALE OF LAND
—DESCRIPTION—CERTAINTY.

A contract which described the land sold as a tract of land in a named borough, county, and state, which was devised to the vendor by his mother by a will recorded in a certain will book at a named page, and which tract contained 22 acres, more or less, is sufficiently definite to satisfy the statute of frauds, and to be specifically enforced, where it appeared that the testatrix devised a tract of land answering that description and containing about that acreage, after a sale of a part thereof as directed by the will, to her two sons, one of whom had died intestate and without issue, so that his brother was his only heir, and there was no other land that could in any way answer the description.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 225-236; Dec. Dig. ⬾110; Specific Performance, Cent. Dig. §§ 69–82; Dec. Dig. ⬾29.]

2. EVIDENCE ⬾460—PAROL EVIDENCE—DESCRIPTION OF LAND—LOCATION.

Parol evidence is not admissible to show the subject-matter of a grant; but, when the description is sufficiently definite to enable the land to be located, such evidence is admissible to supply the particular location.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2115–2128; Dec. Dig. ⬾460.]

3. VENDOR AND PURCHASER ⬾18—OPTION—COUNTER OFFER.

An offer, submitted through one who had a binding option for the purchase of a part or all of a tract of land, to purchase all the land at a price lower than that fixed in the option, is not a refusal to take at the option price, so as to terminate the option.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 23; Dec. Dig. ⬾18.]

In Equity.  Suit by E. J. Baxter against George H. Calhoun and wife.  Decree entered for plaintiff.

H. H. Dinsmore and Moorhead & Smith, all of Greensburg, Pa., for plaintiff.

C. B. Hollingsworth, of Greensburg, Pa., and Watson & Freeman, of Pittsburgh, Pa., for defendants.

THOMSON, District Judge.  This is a bill for specific performance of a contract for the sale of land.

Findings of Fact.

First.  The plaintiff is a citizen of Pennsylvania, residing in Westmoreland county, and the defendants are citizens of Ohio, residing in the city of Cincinnati.

Second.  On February 15, 1911, the defendants entered into a written agreement with the plaintiff, in the form of an option to continue in force for a period of two years from its date, wherein the former agreed to sell and convey to the latter "a certain tract of land situate in the borough of Arnold, county of Westmoreland, state of Pennsyl-

vania, devised to the said George H. Calhoun by his mother, Mrs. M. M. Calhoun, by her will recorded in Westmoreland county in Will Book No. 8, page 126, containing twenty-two acres, more or less," upon certain terms and conditions therein expressed.

Third. Under the terms of said option the plaintiff was, at his own expense, to have the said land surveyed and laid off in small tracts. If the plaintiff elected in writing to accept three or more acres of the said land, the defendants agreed to execute and deliver to him a deed or deeds of general warranty therefor. The net price to be paid for said land was $750 per acre for each acre thereof, irrespective of its location or physical condition, the defendants to be at no expense, except in the preparation of the deeds required by the plaintiff and in the satisfaction of any liens affecting the land.

Fourth. The plaintiff caused two surveys of said land to be made, the one in June or July of 1911, in which said land was laid off into a plan of lots, and another survey and subdivision of the land into lots was made about the month of July, 1912. The said tract by survey was found to contain 22.76 acres of land; the courses and distances and boundaries thereof being as follows, to wit:

"All that certain tract of land situate in the borough of Arnold, county of Westmoreland, and state of Pennsylvania, devised to the said George H. Calhoun by his mother, Mrs. M. M. Calhoun, by her will recorded in Westmoreland county in Will Book No. 8, page 126, containing twenty-two acres, more or less, and more fully described as follows: Beginning at a point at corner of lands of the Kensington Improvement Company (formerly of William Bakewell) and lands formerly of Mrs. Catherine A. Zents (purpart A in the partition of the estate of George W. Hoffman); thence by said lands formerly of Mrs. Catherine A. Zents north sixty-eight degrees forty minutes east, nine hundred seven and sixty-four hundredths feet (N. 68 deg. 40 min. E. 907.64 ft.), to River View plan of lots (formerly a part of this tract); thence along said River View plan of lots north eight degrees forty-two minutes west, nine hundred forty-five and eighteen hundredths feet (N. 8 deg. 42 min. W. 945.18 ft.), to Drey street; thence along the southerly line of Drey street, south seventy-four degrees twenty-nine minutes west, eight hundred five and fifteen hundredths feet (S. 74 deg. 29 min. W. 805.15 ft.), to a point in said line; thence along same south seventy-seven degrees fifty-one minutes west, three hundred two and eighty-nine hundredths feet (S. 77 deg. 51 min. W. 302.89 ft.), to line of said land of the Kensington Improvement Company; thence along said land south twenty degrees forty minutes east, ten hundred forty-seven and thirty-four hundredths feet (S. 20 deg. 40 min. E., 1,047.34 ft.), to the place of beginning—containing twenty-two and seventy-six hundredths (22.76) acres."

The contract price of said land at the rate of $750 per acre would amount to the sum of $17,070.

Fifth. In November of 1912 and prior thereto there were two judgments against the defendant George H. Calhoun entered of record, and liens upon said land aggregating the sum of $2,989.93.

Sixth. On November 26, 1912, the plaintiff gave written notice to the defendant George H. Calhoun, a copy of which is attached to plaintiff's bill and marked "B," that he elected to purchase the entire tract of land mentioned in said agreement, and on the same day, in the city of Cincinnati, tendered or offered to pay said Calhoun the sum of $14,-080.07, being the total consideration or purchase price at the rate of $750 per acre, less the aggregate amount of the two judgments afore-

said, and at the same time demanded that a deed be made to him for said land. The defendant at that time raised no question as to the amount of the judgments, or the amount of the tender, but refused performance on his part, giving as his reason that the plaintiff had not complied with his contract.

Seventh. The land in suit became vested in the defendant George H. Calhoun in the following manner: George W. Hoffman, being the owner of a tract of land in Burrell township, Westmoreland county, containing 175 acres, more or less, an inquisition was awarded to make partition thereof. The land was subdivided into four purparts, and purpart B, containing 32 acres and 113 perches, was awarded to Minnie M. Huffman in fee.

Eighth. Minnie M. Calhoun, formerly Huffman, by her will dated May 22, 1889, and registered in Westmoreland county in Will Book 8, page 125, devised the aforesaid land to her two sons, Ethelbert and George Huffman Calhoun; the executor of said will being directed to sell so much of said property fronting on the Freeport road as would make 10 acres.

Ninth. In pursuance of the authority contained in said will, Alexander W. Logan, the executor, by deed dated December 5, 1890, conveyed to Dr. David Aller the said 10 acres of land. The remainder thereof, containing 22.76 acres, being the land in suit, vested in George H. Calhoun, in severalty upon the death of his minor brother Ethelbert, unmarried, intestate, and without issue. This land, located in the borough of Arnold, which was formerly a part of Burrell township, is the only tract of land left to the defendant by his mother's will which could answer in any way the description in the contract; the only other land which she probably possessed being a small piece, less than an acre in amount, located somewhere near Braeburn station, not in the borough of Arnold.

Tenth. There is no sufficient evidence to establish any contemporaneous oral agreement affecting the written instrument, and therefore the agreement in suit expresses the contract between the parties, which contract was not thereafter surrendered or canceled.

Eleventh. The plaintiff has complied with the contract on his part, and the defendants have failed to perform it on their part.

## Conclusions of Law.

1. The contract in suit is a valid contract in writing, signed by the parties, and is not within the statute of frauds.

2. The contract should be specifically enforced and the defendants should be required to execute and deliver a deed for the land fully described in the bill upon the payment of the purchase money, to wit, $17,070, without interest until final decree, deducting therefrom and paying any liens or incumbrances, with interest and costs, against said property at that time.

## Discussion.

[1, 2] The first and most important question raised by the defendants is as to the sufficiency of the description in the contract in suit, to save it from the operation of the statute of frauds, which provides

222 F.—8

that all estates created by parol and not put in writing and signed by the parties so making or creating the same, shall have the effect of estates at will only. The general rule is that parol testimony is not permitted to show the subject-matter of the grant; but, when the description in the contract is sufficiently definite to fix its location, parol evidence is admissible to supply the particular description. This is clearly established by the authorities. A brief reference to some of the cases may be of advantage.

Soles v. Hickman, 20 Pa. 180. In this case the land was described by the lot number in a town only. It was held that the contract was not self-sustaining, because, while the lot and its location were described, the amount of the consideration was not given.

Ferguson v. Staver, 33 Pa. 411. Here there was no description whatever of the land, the contract simply saying:

"And the said Henry Kissel to execute a deed, upon the payment of the above sum."

It was said in the opinion:

"If the subject-matter, the land, be described, we admit evidence in order to apply the description to the land; but we cannot admit parol evidence, first, to describe the land sold, and then to apply the description."

Smith & Fleek's Appeal, 69 Pa. 474. The description of the land was in the following words:

"Said land is all that piece bought of Rose by Thomas Smith and Porter Fleek."

It being claimed that the description of the land was insufficient, the Supreme Court said:

"Equally unfounded is the objection that the contract is incomplete in its terms. It sets out the parties and the consideration, and sufficiently describes the subject-matter: 'Said land is all that piece bought of Rose by Thomas Smith and Porter Fleek'—certum est quod certum reddi potest. If the subject of the contract is described, parol evidence is admissible to apply the description to the land."

Ross v. Baker, 72 Pa. 186. The vendees took receipts from the vendor for the purchase money, stating the amount paid to be for the "Fleming farm on French creek." The Supreme Court held, reversing the court below, that this was a sufficient description; that it identified the property and therefore satisfied the statute of frauds. The Supreme Court said:

"This document, if receivable in evidence, would have proved the plaintiffs' case undoubtedly. I am strongly of opinion that this document was admissible as evidence of the agreement, for, on the face of it, it has every ingredient necessary to constitute a valid agreement within the statute of frauds. It contains the names of the seller and buyer, a description of the property sold, and the amount of the purchase money."

Phillips v. Swank, 120 Pa. 76, 13 Atl. 712, 6 Am. St. Rep. 691. With corrected spelling, the language of the contract was:

"That Jonathan Phillips shall have the land which he is possessed of now for the labor he done for me over age, and this shall be his receipt for all my rights and claims against the land."

This was held sufficient to allow proof to identify and describe the land. In discussing the question the Supreme Court said:

"It is quite impossible in most cases so to describe land as to avoid the necessity of parol proof for its identification; for, whether it be described by metes and bounds, by monuments erected upon the ground, or by adjoiners, its identification necessarily becomes the subject of parol proof. In this instance, the lands agreed to be conveyed were described as the land of which Jonathan was at the time in the actual occupancy and possession; this was no more open to the objection stated than if it had been described by its adjoiners, or by marks upon the ground."

Peart v. Brice, 152 Pa. 277, 25 Atl. 537. A deed conveyed a tract of land described by metes and bounds and called for other land of the grantor as an adjoiner on the east, "together with the right of mining and removing all the mineral that may be reached under said grantor's land from the land above described, and hereby conveyed." Held, that the description was sufficiently certain to indicate the mineral under the grantor's land east of the tract conveyed, and that parol evidence was admissible to locate it.

Henry v. Black, 210 Pa. 245, 59 Atl. 1070, 105 Am. Rep. 802. The agreement described the property simply as the "Hotel Duquesne," and this was held to be an adequate description. Mr. Justice Dean said:

"Was the description sufficiently certain? The hotel was a prominent one, on one of the principal streets of Pittsburg; probably three-fourths of the citizens of Pittsburg know its exact location. But that, under the authorities, is not sufficient. Is the description in the writing full enough to enable a court to make a decree of specific performance of the contract? The identity of the location is fixed by the name of the hotel. Given the hotel site, the lots on which it stands and the ground properly appurtenant to it can be ascertained by measurements to a certainty. Our records in rural counties are full of deeds which describe thousands of tracts of land conveyed only by their warranty names; no one thinks of objecting to them for insufficiency of description. * * * So here, the identity of the hotel site being fixed, the city and county records establish the boundaries and quantity. This contract then clearly identified the subject of it; that identification furnished the purchaser or a court the means of making clear the boundaries and quantity of land."

Ranney v. Byers, 219 Pa. 332, 68 Atl. 971, 123 Am. St. Rep. 660. A declaration of trust provided as follows:

"The arrangement with Mr. Byers is this: All money invested by him in the 'Byers Place' to be placed to his credit, and to bear interest from the date credit is given until paid. When the total principal and interest is paid in full, then the residue or remaining property to belong to C. W. and R. B. Ranney."

Held, that the designation of the place as the "Byers Place" identified the property.

Lemmon v. Lemmon, 47 Pa. Super. Ct. 604. In this case the reference was to "those lots." The court said:

"If the lots had been referred to in the contract as lots devised to the plaintiff by the last will of Sidney Lemmon, that would have warranted showing by parol evidence where said lots were located, but we find nothing of that kind in either the oral or written contract."

The cases in which it has been held that the description was insufficient under the statute are in entire harmony with the principles

above laid down, as in Mellon v. Davison, 123 Pa. 298, 16 Atl. 431, where the property was described as:

"A lot of ground fronting about 190 feet on the P. R. R., in the Twenty-First ward, Pittsburgh."

Barnes v. Rea, 219 Pa. 287, 68 Atl. 839. There the first party agreed to sell—

"all the nine-foot or Pittsburg vein of coal in and under that certain tract of land in Cumberland township, in Greene county, Pennsylvania, bounded by lands of * * * and containing thirty-nine (39) acres, more or less."

The court held the description insufficient, because the contract did not designate the tract by any name, or give any adjoining owner, or fix any natural boundaries, nor designate it in any manner by reference to deed, will, warrantee number or source of title.

Welsh's Estate, 45 Pa. Super. Ct. 115. The agreement was:

"John E. Williams sold to Andy Welsh house and lot on Acorn street for the sum of five hundred dollars."

The court held this description might apply to any one of the several houses owned by the defendant on Acorn street.

Troup v. Troup, 87 Pa. 149. The description was:

"A tract of three acres of land, more or less, situate in the township aforesaid."

Held, the description was insufficient, but the taking of possession and the markings on the ground identified the property.

Hammer & Dauler v. McEldowney, 46 Pa. 334. A receipt was:

"Received from Messrs. Hammer & Dauler, $20, on account of property sold to them, the houses on Smithfield street; the price to be $7,800."

The description was held insufficient.

It is clear that in none of these cases was the subject of the grant sufficiently identified, and they therefore came within the statute of frauds. Applying the principles enunciated in the cases to the contract in suit, the property is described as:

"A certain tract of land situate in the borough of Arnold, county of Westmoreland, and state of Pennsylvania, devised to the said George H. Calhoun, by his mother, Mrs. M. M. Calhoun, by her will recorded in Westmoreland county, in Will Book No. 8, page 126, containing 22 acres, more or less."

The general description as to location and acreage is made specific by reference to the will under which it was devised to the grantor. The description refers to a definite piece of property and can refer to no other. The testatrix had no other property to which the description could by any possibility apply. The property which the mother willed to her two sons became, on the death of the younger, the property of the grantor. From the tract so devised, 10 acres, under the directions of the will, were sold. This left 22 and a fraction acres, formerly in the township of Burrell, now in the borough of Arnold. Shortly before and shortly after the making of the contract, the defendant pointed out to the plaintiff upon the ground the general boundaries of the land, thus distinctly identifying it as the subject-matter of the contract. The land was surveyed by the plaintiff, laid off in lots, and blue-

prints furnished the defendant. In the defendant's testimony he identifies the land in question as the land willed to him by his mother and as the land described in the contract of sale. The description of the land in the contract was sufficiently specific to fix its location and to admit oral and record proof to supply its description and boundaries. That which was capable of being rendered certain has been rendered indubitably certain by the testimony. I am convinced, under all the authorities, that the contract is not within the statute of frauds.

[3] There was no sufficient evidence of any parol contemporaneous agreement modifying or altering the legal effect of the contract in suit. There was much correspondence passed between the parties, but on the whole it is not inconsistent with the provisions of the written agreement. The plaintiff had the right to accept 3 or more acres at a time, as lots might be sold, the defendants to make deeds and be paid at the rate of $750 per acre. As it was not certain, during the running of the option, what part, if any, of the land the plaintiff might choose to purchase, it was natural that he should manifest a desire that it be laid off in lots to the satisfaction of the defendant. There is evidence of delay in getting surveys satisfactory to both parties, and evidence that the consideration named was above that at which it appeared to be marketable; but the letters passing back and forth did not relate to the terms of the original contract nor undertake to alter those terms.

On March 19, 1912, plaintiff sent to defendant the following telegram:

"Will you take 14,500 dollars net—4,500 cash when title is ex—bal. 1000 3 yrs. 6% mortg—privilege of 1000 or more at any time—better cut loose. Wire me to-day.                                               E. J. Baxter."

It is strongly urged by the defendants that this must be construed as a refusal on the part of the plaintiff to take the property at the option price, and that therefore the option is at an end. I do not so regard it. This telegram must be read in the light of the correspondence which preceded it, the defendant's reply thereto, the plaintiff's testimony in relation to the same, and the rights of the parties as they existed under the contract. The case is not the same as an offer by A. to sell to B. at a certain price, and a reply by B. offering a lower price. This would be construed as a rejection by B. of A.'s offer, and his subsequent acceptance would not be binding on A.

Here the plaintiff had the right to accept within the period of two years. As I construe the contract, this related either to a part or to the whole. If before plaintiff had made any election some one offered through him to take the whole tract at a lower price, surely the plaintiff's submission of that offer to the defendant, if refused, should not deprive the plaintiff of his rights under the contract.

While the case is not free from difficulty, I am of opinion that the plaintiff is entitled to have the contract specifically enforced.

Let a decree be drawn accordingly.